[Civ. No. 18425. Fourth Dist., Div. One. Mar. 18, 1980.]

BEN ABATTI et al., Plaintiffs and Respondents, v.
ED ELDRIDGE et al., Defendants and Appellants.

COUNSEL

Sutherland & Gerber, Lowell F. Sutherland and Neil Gerber for Defendants and Appellants.

Kronick, Moskovitz, Tiedemann & Girard and Stephen A. Kronick for Plaintiffs and Respondents.

OPINION

**STANIFORTH, Acting P. J.**—Appellants (Eldridges) were sued by the Abattis for specific performance of an option contract on real property.

The option agreement required Abattis to pay Eldridges a purchase price of $246,500. Eldridges were also the judgment debtors of Louis L. Lanza (respondent) on a judgment rendered by the San Bernardino County Superior Court in 1976. The Bank of America (Bank) holds a trust deed on the subject property to secure a loan in the amount of $1.3 million. The Bank was named as a defendant in Abattis' suit but later dismissed. Lanza's judgment was unpaid and he by motion, brought pursuant to Code of Civil Procedure section 688.1,[1] sought to impose a lien to the extent of his unpaid judgment on any monies Eldridges may recover from Abattis in this lawsuit. The trial court granted Lanza's motion for lien and Eldridges appeal.

I

The precise question presented by this appeal is the validity of that grant of lien. It is first contended that judgment debtor-defendant Eldridges had no "cause of action" upon which the court could impose a lien.

Section 688.1, subdivision (a) (with exceptions not here applicable) provides in part: "[U]pon motion of a judgment creditor of any party in an action or special proceeding made in the court in which the action or proceeding is pending upon written notice to all parties," the court may in its discretion grant the judgment creditor a lien on "the cause of action, and upon any judgment subsequently procured" and permit him to intervene in the case. Any lien granted the creditor shall be to the extent of his judgment upon all monies recovered by his judgment debtor in the action or proceeding and "no compromise, settlement or satisfaction shall be entered into by or on behalf of such debtor" without the creditor's consent. The section provides for an indorsement upon the judgment of a statement of the existence of the lien.

Before the 1941 amendment to section 688, a judgment creditor seeking satisfaction of his judgment could levy execution upon and sell a pending cause of action in which his judgment debtor was *plaintiff*. (*Everts* v. *Will S. Fawcett Co.* (1937) 24 Cal.App.2d 213, 215-217 [74 P.2d 815]; Comment, 14 So.Cal.L.Rev. 172, 178.) This procedure created the danger that the forced sale of the disputed claim or cause of action would realize far less than it was worth. In 1941 the Legislature amended section 688 to prohibit levy upon, or sale on execution of, a cause of action or judgment. (Stats. 1941, ch. 1148.) The purpose of

---

[1]All reference is to the Code of Civil Procedure unless otherwise specified.

the 1941 amendment was to eliminate the danger that the plaintiff-judgment debtor would be deprived of his cause of action at a figure far below its actual worth, and thereby have less of his judgment debt satisfied than proper. (*Takehara* v. *H. C. Muddox Co.* (1972) 8 Cal.3d 168, 172 [104 Cal.Rptr. 345, 501 P.2d 913]; *The Work of the 1941 Legislature* (1941) 15 So.Cal.L.Rev. 1, 18.)

The 1941 legislation while amending section 688 also enacted section 688.1, creating an entirely new procedure and affording the judgment creditor an opportunity to obtain a lien upon the cause of action. (Stats. 1941, ch. 1148.) "Evidently this section was intended to give the judgment creditor a new means of reaching a cause of action belonging to his judgment debtor and upon which an action is pending, since, under the amendment to Section 688, the cause of action no longer can be levied upon and sold on execution. . . . Since experience has demonstrated that a cause of action upon which an action is pending does not bring very much on execution sale [fn. omitted] the remedy now provided for by Section 688.1 is a more just and reasonable one. It protects the judgment creditor and gives him adequate relief and at the same time does not produce unfair hardship insofar as the judgment debtor is concerned." (*The Work of the 1941 Legislature, supra,* 15 So.Cal.L.Rev. at p. 18.) (See *Roseburg Loggers, Inc.* v. *U. S. Plywood-Champion Papers, Inc.* (1975) 14 Cal.3d 742, 746-747 [122 Cal.Rptr. 567, 537 P.2d 399].)

The plain explicit language of section 688.1 permits the judgment creditor of any party, plaintiff or defendant, to move for a lien. A 1968 amendment to section 688.1 substituted the words "any party" where formerly the section only spoke of plaintiffs. (§ 688.1 (West's 1979 supp.) official forms.) The fact that the prior law was amended demonstrates an intent to change the preexisting law. (*Eu* v. *Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289].) The broader term "any party" was intended to embrace those on the defense side of the cause as well as the offense. Any other interpretation would render the "any party" language mere surplusage, thereby not giving significance to every word. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].)

## II

The term "cause of action" is subject to different meanings dependent on its usage in a given context. (*Lippert* v. *Bailey* (1966) 241 Cal.

App.2d 376, 381 [50 Cal.Rptr. 478].) "A cause of action is the right to relief in court." (*Franchise Tax Board* v. *Firestone Tire & Rubber Co.* (1978) 87 Cal.App.3d 878, 884 [151 Cal.Rptr. 460].) It is the right to enforce an obligation. (*Woods* v. *Cook* (1936) 14 Cal.App.2d 560, 562 [58 P.2d 965].)

A "cause of action" is simply "'the obligation sought to be enforced.'" (*Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 975 [104 Cal.Rptr. 42, 500 P.2d 1386]; *Eichler Homes of San Mateo, Inc.* v. *Superior Court* (1961) 55 Cal.2d 845, 847 [13 Cal.Rptr. 194, 361 P.2d 914]; *Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636, 638 [134 P.2d 242]; *Shelton* v. *Superior Court* (1976) 56 Cal.App.3d 66, 80 [128 Cal.Rptr. 454]; *Colvig* v. *RKO General, Inc.* (1965) 232 Cal.App.2d 56, 66 [42 Cal.Rptr. 473].)

In *Frost* v. *Witter* (1901) 132 Cal. 421, 426 [64 P. 705], the Supreme Court explained: "The latter term [action] is very commonly confounded with the *suit* (*litis*) in which the action is enforced. But this is not the technical meaning of the term, according to which an action is simply the right or power to enforce an obligation. 'An action is nothing else than the right or power of prosecuting in a judicial proceeding *what is owed to one,*'—which is but to say, an *obligation.* (*Actio nihil aliud est quam jus persequendi in judicio quod sibi debitur.*) The action therefore springs from the obligation, and hence the 'cause of action' is simply the obligation."

The cause of action constitutes the entire set of facts which gives rise to an enforceable claim. (*Life & Casualty Insurance Company of Tenn.* v. *Webb* (1965) 112 Ga.App.344 [145 S.E.2d 63, 67]; *Elliott* v. *Mosgrove* (1939) 162 Ore. 507 [93 P.2d 1070, 1072-1073]; Black's Law Dict. (4th ed.) pp. 279-280.) The foregoing definitions compel this conclusion: the term "cause of action" is not limited to the *plaintiff's* right to recover in a court proceeding.

Here the underlying set of facts, the obligation sought to be enforced —the cause of action—was contractual in nature invoking mutual interdependent rights and duties. Eldridges granted an option which Abattis sought to specifically enforce. While the option did not create a binding obligation on Abattis, yet once exercised a bilateral contract arose which may be enforced by specific performance by either the optionor or optionee. "[W]here a party commences an action to compel the specific enforcement of an agreement for the sale of real property, the

requirement of mutuality is satisfied, the theory being that by bringing the action the plaintiff has submitted himself to the jurisdiction of equity and thereby enables the court to assure performance by him. [Citations.]" (*Ellis* v. *Mihelis* (1963) 60 Cal.2d 206, 216 [32 Cal.Rptr. 415, 384 P.2d 7]; *Kowal* v. *Day* (1971) 20 Cal.App.3d 720, 724-725 [98 Cal.Rptr. 118].)

Abattis, in order to obtain specific performance, would have the concomitant obligation to pay the agreed purchase price of $246,500 to Eldridges according to the terms of their contract. Thus Eldridges, not just Abattis, have a right to relief in this court proceeding. The "entire set of facts" gives rise to an obligation owing to Eldridges.

Eldridges argue the Legislature manifested its intent to give a narrow definition to "cause of action" language and remedial scope of section 688.1 when it deleted from a proposed amendment to section 688.1 the clause "or the right to relief, if the party or parties against whom the lien is sought are appearing in a capacity other than plaintiff." (Code Civ. Proc., § 688.1 official forms (1968 amend.); Stats. 1970, ch. 1245.) The legislative failure to include this language in the section 688.1 is susceptible to numerous inferences, all of which are naught but pure speculation. Moreover, such argument flies in the face of our duty to construe this remedial statute liberally. (*McClearen* v. *Superior Court* (1955) 45 Cal.2d 852, 856 [291 P.2d 449].)

We conclude a "cause of action" was vested in Eldridges subject to lien by Lanza under section 688.1.

## III

■ Finally, Eldridges argue the trial court's order must be considered void because the Bank, a secured creditor of Eldridges, without notice, was not given priority over Lanza on the proceeds of the sale of property. Eldridges represent the option agreement required the land be transferred subject only to a first trust deed; that the Bank obtained its second trust deed on the property after the granting of the option. Eldridges also assert that upon Abattis' attempt to exercise the option, it was found the agreement was impossible to perform because the amount due under a guaranty secured by the Bank's deed of trust exceeded the value of the land. These facts, if true, do not make the lien here imposed void. There may be no funds forthcoming from this lawsuit to which the lien may attach; but such fact, if it be fact, does not negate the lien.

Eldridges next argue that the judgment lien would be secondary to the Bank's deed of trust which it is represented was first in time. Section 688.1 is silent as to the priority of liens granted pursuant to that section. In *Takehara* v. *H. C. Muddox Co., supra*, 8 Cal.3d 168, 172, the Supreme Court held that other things being equal, "section 688.1 provides for creation of a lien against a cause of action at the time of the trial court's granting the lien, that the section does not establish any special rule of priority between lien claimants, and that the ordinary rule set forth in section 2897 establishing priority on the basis of time of creation of the liens is determinative."

The trial court here made no determination as to the existence of *lien* rights on money proceeds (if any) possessed by the Bank. Nor was the question of priorities, if any, determined by the order granting the lien. These proceedings do not encompass an issue of priorities of liens. The Bank was not a party to the proceedings, was not required to be given notice under the section.

Moreover Abattis' argument confuses the lien of the Bank on the *land* with Lanza's lien on the proceeds of the sale (if any) if ordered in this lawsuit. These are two different assets, two different liens.

As a general rule, the holder of a security in real property by virtue of a trust deed has no secured interest in the proceeds of the sale of that property. (*Aitchison* v. *Bank of America etc. Assn.* (1937) 8 Cal.2d 400, 403-404 [65 P.2d 890].)

The Bank's rights in the proceeds of sale of the secured property, however, is to be measured by the language of their trust deed, loan agreement. The validity of any such claim, its nature and extent are not now before this court.

Judgment affirmed.

Wiener, J., and Henderson, J.,* concurred.

A petition for a rehearing was denied April 2, 1980, and appellants' petition for a hearing by the Supreme Court was denied May 14, 1980.

---

*Assigned by the Chairperson of the Judicial Council.