[Civ. No. 18596. Fourth Dist., Div. One. Nov. 20, 1980.]

BEN ABATTI et al., Plaintiffs, v.
ED ELDRIDGE et al., Defendants and Appellants;
LOUIS L. LANZA et al., Claimants and Respondents.

COUNSEL

Sutherland & Gerber and Neil Gerber for Defendants and Appellants.

Kronick, Moskovitz, Tiedemann & Girard, Stephen A. Kronick and Paul M. Bartkiewicz for Claimants and Respondents.

OPINION

WIENER, J.—The question in this appeal is whether the court properly exercised its discretion in resolving competing creditors' claims to an insufficient common fund. Or, phrased differently, if the court can't increase the size of the pie, how should it cut the slices? We hold the court was correct in denying defendants' motion to approve a settlement with plaintiffs where the settlement was an attempt to finesse the lien of a judgment creditor imposed pursuant to Code of Civil Procedure section 688.1. In other words, where the pie is ample, equity requires that each creditor be given a portion.

*Factual and Procedural Background*

In 1972, plaintiffs, Ben and Tony Abatti (Abatti), acquired an option to buy land owned by defendants, Ed and Nel Eldridge. The purchase

price of $246,500 was payable either in cash or over five years in ten equal, semiannual payments of principal plus interest at a variable rate with title to be vested in the buyer subject only to Abatti's purchase money deed of trust if the installment sale were selected.

Plaintiffs timely exercised their option in August 1976. Defendants, however, were unable to transfer proper title because of an encumbrance on the subject property in favor of the Bank of America (Bank) as beneficiary of a deed of trust recorded June 16, 1967, and modified November 7, 1974, securing defendants' continuing guarantee of $2 million, with a then current balance of approximately $1.2 million. On April 20, 1977, plaintiffs sued defendants in the Imperial County Superior Court for specific performance of the option, breach of contract and damages.

In an unrelated action in San Bernadino County, Louis L. Lanza and others (Lanza/judgment creditors), had obtained judgments in March 1971, against defendants totaling approximately $52,000. About a year later, Lanza successfully moved under Code of Civil Procedure section 688.1 for an order impressing a lien on any monies received by defendants from plaintiffs. We affirmed the court's ruling in *Abatti* v. *Eldridge* (1980) 103 Cal.App.3d 484 [163 Cal.Rptr. 82].

In September 1978, defendants moved for an order approving a settlement with plaintiffs which eliminated the judgment creditors' lien. The settlement provided for plaintiffs to buy defendants' property for approximately $832,870 paid as follows: $650,000 cash to the Bank; forgiveness of a previously advanced $50,870; assumption of a first trust deed of $102,000 to Northwestern Mutual Life Insurance Company; and payment of delinquent property taxes of $30,000. The court declined to approve the settlement prompting this appeal by defendants.

### Discussion

Defendants describe the question here as whether the court erred in not declaring the Bank's deed of trust senior to the lien of the judgment creditors.

Defendants assume, incorrectly, the court denied the motion because it concluded the Bank was entitled to priority. Neither the comments of

the trial judge nor the court order supports this premise. At the hearing, the judge correctly opined he thought the underlying purpose of section 688.1 was to prevent possible collusion between a debtor and certain of his creditors to the detriment of other creditors. Quite simply, his order rests on another more basic premise—the settlement was unfair in squeezing out Lanza where on the evidence other settlements on more favorable terms were available to all the parties including the judgment creditor.

■ The Legislature, in first enacting section 688.1, attempted to balance the interests of the judgment creditor and his judgment debtor. (See generally, *The Work Of The 1941 Legislature* (1941) 15 So.Cal. L.Rev. 1, 18; *Abatti* v. *Eldridge, supra*, 103 Cal.App.3d 484, 486-487.) A trial judge, in deciding in the first instance whether to permit imposition of a section 688.1 lien, must recognize the statute is "remedial in nature and should be liberally construed to give effect to the remedy which it authorizes." (*McClearen* v. *Superior Court* (1955) 45 Cal.2d 852, 856 [291 P.2d 449].) The possibility that the lien may at some future time frustrate settlement negotiations between the parties to the litigation is, standing alone, insufficient to support an order denying the lien claim, for if so interpreted it would in effect vitiate section 688.1. (*Atiya* v. *Di Bartolo* (1976) 63 Cal.App.3d 121, 126 [133 Cal.Rptr. 611].)

■ The determination in the first instance that the lien may be appropriate, however, does not forever preclude further judicial action. Although section 688.1 provides that "no compromise, settlement or satisfaction shall be entered into by or on behalf of such debtor without the consent of such judgment creditor, unless his lien is sooner satisfied or discharged," we hold the court has continuing jurisdiction to approve a settlement even though the settlement may not fully satisfy the lien. Our holding rests on the inherent power of a court to retain control over pending litigation (see generally Code Civ. Proc., § 128) and to do justice to the parties before it (*Goodspeed* v. *Great Western Power Co.* (1939) 33 Cal.App.2d 245, 270 [91 P.2d 623, 92 P.2d 410]; *Salaman* v. *Bolt* (1977) 74 Cal.App.3d 907, 918 [141 Cal.Rptr. 841].) To decide otherwise would permit the settlement of cases to turn on facts as seen only prospectively and not as they actually occur. Moveover, settlement should rest on the sound discretion of a court rather than on the whim of a judgment creditor. Defendants' motion to approve the settlement was properly before the court.

A court may exercise its broad equitable powers to resolve competing creditors' claims in different procedural contexts. One case may require an equitable set-off (see, e.g., *Haskins* v. *Jordan* (1898) 123 Cal. 157, 160 [55 P. 786]; *Margott* v. *Gem Properties, Inc.* (1973) 34 Cal.App.3d 849, 854 [111 Cal.Rptr. 1].); another the marshaling of assets (Civ. Code, § 3343). Regardless of the procedure, equitable considerations may require that the satisfaction of one creditor should not depend upon the will of another. (*Mack* v. *Shafer* (1901) 135 Cal. 113, 117 [67 P.40]; *Shedoudy* v. *Beverly Surgical Supply Co.* (1980) 100 Cal.App. 3d 730 [161 Cal.Rptr. 164].)

■ Here, in denying defendants' motion the trial judge in effect was inviting further proceedings. ·

The parties were informed that a court may well reject bleak financial pictures drawn by creative advocates. Judges will, and should, continue to rely on their experience, common sense and intuition particularly where certain facts become conspicuous by their omission. The Bank did not appear; the terms of defendants' obligation, the continuing guarantee and the deed of trust, were not presented. Of further note is the sequence of the respective recordation dates of the Bank's trust deed and the option agreement—the former was recorded about five years before the latter. One reasonable inference on the limited record before the trial court is that at one time either the Bank was willing to subordinate its encumbrance to permit the exercise of the option; another is that plaintiffs were willing to take the property subject to the Bank's deed of trust. In any event, the court had sufficient legitimate concern with the fairness of the proposed settlement in light of the entire transaction to deny defendants' motion.

The court was also telling the parties that other avenues, including marshaling, were available. Although there have recently been some suggestions to the contrary (see *Carsten* v. *Psychology Examining Com.* (1980) 27 Cal.3d 793, 801 [166 Cal.Rptr. 844, 614 P.2d 276]), courts have not yet been relegated to the status of an endangered species and should still be used for dispute resolution. Defendants have the continuing opportunity to resolve the litigation with plaintiffs, including a settlement which will give a slice of the pie to the judgment creditor. Whatever the nature of the hearing, marshaling or the elimination of the judgment creditor's lien, the court should have all relevant and necessary information to determine the size of the pie, the slice of the pieces, and when it is appropriate for one creditor to go hungry.

*Disposition*

The order is affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.