[No. F040652. Fifth Dist. June 3, 2003.]

ERNEST N. OLDHAM, Individually and as Trustee, etc., Plaintiff and Respondent, v.
CALIFORNIA CAPITAL FUND, INC., et al., Defendants and Respondents;
COLUMBUS AND CHESTER PARTNERSHIP, Claimant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I of Discussion.

**COUNSEL**

Dessy & Dessy and Ronald D. Dessy for Claimant and Appellant.

Perlman Duncan, Scott D. Perlman and James M. Duncan for Plaintiff and Respondent.

Borton, Petrini & Conron, Gael G. Mueller and Michael S. Abril for Defendants and Respondents.

**OPINION**

**GOMES, J.**—A judgment creditor filed a lien under Code of Civil Procedure section 708.410 against a pending lawsuit brought by the judgment debtor. The judgment debtor and the defendants subsequently agreed to settle that lawsuit with a payment by the defendants of $75,000 in cash, a transfer of interests in real property, and a payment by the defendants of the taxes past due on the real property. The judgment debtor moved for an order approving the settlement and the payment of attorney fees and costs ahead of the judgment creditor. The judgment creditor's opposition to the motion claimed the transfer of the real property interest was structured to avoid its

judgment lien and it was inequitable to give the attorney lien priority because the attorneys helped evade the lien. The superior court approved the settlement and ruled the lien of the attorneys for fees and costs had priority.

The judgment creditor appeals, claiming too little information was presented about the transfer of interests in the real property for the superior court to have properly exercised its discretion in approving the settlement. Because of this lack of information, the superior court was unable to tell if the settlement was structured to evade the judgment lien. We conclude (1) the record did not contain information necessary for the superior court to exercise its discretion, and (2) the judgment debtor failed to provide sufficient facts for the court to understand the property interests being transferred, the entities involved, and the relationship between the entities and the property interests. We reverse and remand for further consideration.

### FACTS AND PROCEEDINGS

On August 30, 2000, a judgment was filed in Kern Superior Court (*Columbus and Chester Partnership v. K-V Foods, Inc.*, No. 238375), stating that appellant Columbus and Chester Partnership (Lienholder) was entitled to judgment against respondent Ernest N. Oldham (Oldham) and others in the principal amount of $222,000.

On December 7, 2000, Oldham hired the law firm of Perlman & Duncan (P&D) to bring a lawsuit against respondents California Capital Fund, Inc., Max Gradowitz, Marta Gradowitz, Kent Gradowitz, Kraig Gradowitz and Jana Olivieri (collectively, Defendants) for breach of promissory notes in the amounts of $435,000 and $500,000. Oldham signed a document titled "Agreement to Employ Attorney on Contingency Fee Basis" that set forth the terms of the contingency fee arrangement and gave P&D a lien against any sum recovered by way of settlement or judgment. The agreement provided that Oldham was responsible for costs and disbursements and that P&D would receive 40 percent of amounts recovered after the mandatory settlement conference.

In accordance with the agreement, P&D filed an action on behalf of Oldham, as an individual and as trustee for the ENO Trust, against Defendants in Kern Superior Court, case No. 243461 (Oldham Action). Max Gradowitz and Marta Gradowitz filed a cross-complaint against Oldham alleging $250,000 in damages from a breach of contract.

Lienholder became aware of the Oldham Action and filed a Judicial Council form Notice of Lien (AT-180, EJ-185) in that case on March 29,

2001. The notice of lien was filed pursuant to Code of Civil Procedure section 708.410.[1]

On January 4, 2002, the mandatory settlement conference was held in the Oldham Action, but a settlement was not reached. However, within a week, the parties to the Oldham Action had reached a tentative agreement on settlement. A draft of the settlement agreement prepared by counsel for Defendants stated that Defendants would pay $75,000 in cash, execute a grant deed in Oldham's favor with respect to three-quarters of a section of agricultural land located in Riverside County, California (Jojoba Property), obtain title insurance on the Jojoba Property in favor of Oldham, and cause California Investment Fund, Inc. (CIF),[2] to assign its deed of trust in the Jojoba Property to Oldham. The draft settlement agreement also stated Oldham was to deliver to counsel for Defendants an unrecorded grant deed dated August 17, 1999, that he held against the Jojoba Property (Grant Deed). Under the Grant Deed, California Capital Fund, Inc., granted the Jojoba Property[3] to "Ernest Oldham, Trustee, for Investors of Capital Investment Fund Inc., II."

By letter dated January 29, 2002, P&D informed counsel for Lienholder of the proposed settlement and provided a copy of the draft of the settlement agreement. The letter also proposed that 40 percent of the cash proceeds from the settlement be paid to P&D as its attorney fees with the balance applied to Lienholder's judgment lien.

Subsequent negotiations between Oldham and Defendants led to their execution of a final settlement in late February 2002. Under the settlement agreement, Defendants agreed to pay Oldham and the ENO Trust $75,000 in cash, cause CIF to reconvey its deed of trust against the Jojoba Property, and pay all past due property taxes against the Jojoba Property.[4] As a result of changes from the terms of the draft settlement agreement, Oldham would not receive fee simple ownership of the Jojoba Property. Instead, Oldham could take title to the Jojoba Property as trustee for investors of Capital Investment Fund, Inc. II if he chose to record the Grant Deed. The settlement agreement did not require Oldham to record the Grant Deed.

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]CIF was not a party to the Oldham Action or to the settlement agreement that is the subject of this appeal.

[3]The legal description attached to the Grant Deed erroneously lists the second parcel of the Jojoba Property as being "in the County of San Bernardino, State of California." The settlement agreement and the first page of the Grant Deed state the Jojoba Property is located in Riverside County and has assessor's parcel Nos. 812-161-028 and 812-161-029.

[4]The payments included the first installment of the 2001-2002 property taxes, but did not include the second installment, which became past due after April 10, 2002.

The record on appeal does not contain any information about CIF, Capital Investment Fund, Inc. II, or the investors in Capital Investment Fund, Inc. II, except that Defendants appear to control CIF to an extent that they can cause it to reconvey its deed of trust against the Jojoba Property. The public records maintained by the California Secretary of State and available online through the Internet indicate a corporation named "California Investment Fund, Inc." was incorporated on January 23, 1978, was suspended and reinstated in 1979, and was suspended again on May 1, 1981, by the Franchise Tax Board. According to those records, the corporation is still suspended. It is not clear whether this corporation is the CIF referred to in the settlement agreement. Also, the search of these records did not reveal a corporation named Capital Investment Fund, Inc. II.[5]

After the parties signed the settlement agreement, counsel for Oldham filed a motion for an order approving the settlement and for the disbursement of settlement proceeds. The motion proposed that the attorney fees and costs of Oldham's counsel be paid from the $75,000 cash proceeds and the remaining available cash be paid to Lienholder.

Lienholder filed an opposition to Oldham's motion arguing for denial of the motion because Oldham did not provide the court with enough information to exercise its discretionary authority to "include such terms and conditions as the court deems necessary" in accordance with section 708.440, subdivision (b). In particular, the motion focused on how the settlement handled the Jojoba Property, the uncertainty created regarding Oldham's interest in the Jojoba Property, and the possibility the uncertainty was created to evade the judgment lien. Lienholder argued that Oldham should have filed a declaration explaining why the Grant Deed was never recorded, how he could have acted as a legitimate trustee without recording the Grant Deed to protect the interests of the beneficiaries,[6] and why the settlement terms concerning the Jojoba Property were modified so Oldham would not take fee simple title.

In Oldham's reply to Lienholder's opposition, Oldham's counsel responded to Lienholder's demand for an explanation of the change in settlement terms concerning the Jojoba Property by stating that the explanation

---

[5]The information obtained online is provided here for background purposes and is not critical to the outcome of this appeal. Consequently, we have not requested the parties to submit supplemental briefs under Government Code section 68081 addressing whether it is within our discretion to take judicial notice of the public records obtained from the online service. (See Evid. Code, §§ 459, subd. (a), and 452, subds. (c), (h).)

[6]For a discussion of the use of recorded and unrecorded deeds to transfer property into a California trust, as well as the type of deeds used and the ways in which the deed may identify the trustee, see Maurer and Friedemann, *Lending to Family Living Trusts* (1998) 52 Consumer Fin. L.Q. Rep. 198, 200-201. The decision not to record the Grant Deed might have a legitimate explanation, but nothing in the record explains that decision.

demanded would "invade the attorney-client privilege." Also, the declaration of counsel for Oldham accompanying the reply stated the following about the settlement agreement's treatment of the Jojoba Property: "When tentative settlement terms were agreed to in late January 2002, a portion of the settlement called for defendant California Capital Fund, Inc.'s [sic] to deed the 'Jojoba Property' to Mr. Oldham. During our due diligence regarding the [Jojoba P]roperty, we discovered the property had been previously deeded to Mr. Oldham as a trustee on August 17, 1999. A true and correct copy of the August 17, 1999 Grant Deed is attached hereto as Exhibit 'A'. Since the property was previously deeded to Mr. Oldham as a trustee for the benefit of investors in Capital Investment Fund, Inc. II, it did not seem viable to have the deed reconveyed to the defendant so that a new deed, solely in the name of Mr. Oldham, could be issued as part of this settlement. Accordingly, we negotiated with defendants to reconvey their deed of trust against the property and pay the back property taxes."

The superior court heard oral argument on the motion for an order approving the settlement on March 18, 2002. At the start of the hearing the superior court stated its tentative ruling was to grant Oldham's motion and also stated, "I'm not sure I need to establish what the real property tax situation may be, but in terms of the priority issue and whether or not this settlement can go forward, I see nothing legally preventing the settlement . . . ." At the end of the argument, the superior court stated it would rule as stated in its tentative order, and directed P&D, as counsel for Oldham, to prepare the order. On March 27, 2002, a written order approving the settlement and directing disbursement of the cash proceeds was filed. Of the cash proceeds of $75,000, P&D was to receive $30,000 to pay its fee and $3,319.10 for costs. The balance of $41,680.90 was to be applied to the judgment lien of Lienholder.

Three weeks later, Lienholder filed a motion to enter judgment against Defendants for violation of the rights of Lienholder. In the motion, Lienholder argued that Defendants "transferred property that was subject to the lien" within the meaning of section 708.470, subdivision (c) and therefore were liable to Lienholder for the value of the interest in the Jojoba Property that was transferred free of its judgment lien.

Defendants filed an opposition to the motion to enter judgment against them, contending the superior court lacked jurisdiction to enter such an order and Lienholder waived its argument by not raising the issue in its opposition to the motion to approve the settlement. The motion was heard on May 9, 2002, and the superior court denied the motion on the grounds that its ruling on the motion to approve the settlement resolved the issues raised by

Lienholder's motion. Lienholder then filed a notice of appeal of the order approving the settlement and the order denying the motion to enter judgment against Defendants.

## DISCUSSION

This appeal concerns provisions in the Code of Civil Procedure governing the lien a judgment creditor may obtain against a judgment debtor who is a party to a pending action or proceeding. (§§ 708.410-708.480 (Article 5).)[7] Under Article 5, a judgment creditor may place a lien on the rights of the judgment debtor to receive money, property or both by way of a settlement or judgment entered in that action. (§ 708.410, subd. (a).) In this appeal, the primary dispute concerns section 708.440, which provides in relevant part:

"(a) Except as provided in subdivision (c) of Section 708.410, unless the judgment creditor's money judgment is first satisfied or the lien is released, . . . no compromise, dismissal, settlement, or satisfaction of the pending action . . . may be entered into by or on behalf of the judgment debtor, without the written consent of the judgment creditor or authorization by order of the court obtained under subdivision (b).

"(b) Upon application by the judgment debtor, the court in which the action . . . is pending . . . may, in its discretion, after a hearing, make an order described in subdivision (a) that may include such terms and conditions as the court deems necessary. The application for an order under this subdivision shall be made on noticed motion. The notice of motion shall be served on the judgment creditor. Service shall be made personally or by mail."

Oldham and Defendants argue that the superior court's approval of their settlement of the Oldham Action was within the discretion granted by subdivision (b) of section 708.440. In contrast, Lienholder argues the superior court abused its discretion by acting without sufficient information about the undisclosed benefits Oldham received, or may have received, from (1) CIF's reconveyance of its deed of trust against the Jojoba Property, and (2) Defendants' payment of the property taxes due on the Jojoba Property.

---

[7]These sections comprise article 5 of chapter 6 of division 2 of California's Enforcement of Judgments Law. (Stats. 1982, ch. 1364, § 2, pp. 5197-5201.) Article 5, which became operative on July 1, 1983 (Stats. 1982, ch. 1364, § 3, p. 5236), superseded former section 688.1, which was enacted in 1941. (Stats. 1941, ch. 1148, § 2, p. 2856; see Howell, *The Work of the 1941 Legislature: Civil Procedure* (1941-1942) 15 So.Cal. L.Rev. 1, 18.)

## I. *Standing**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. *Standard of Review*

■ An abuse of discretion standard generally applies to a decision concerning the approval of a settlement under section 708.440. (*Pangborn Plumbing Corp. v. Carruthers & Skiffington* (2002) 97 Cal.App.4th 1039, 1048 [119 Cal.Rptr.2d 416].)

## III. *The Proponent of the Settlement Failed to Present Facts Material to Approval*

■ It is well established that "[t]o exercise the power of judicial discretion, all material facts and evidence must be both known and considered, together with legal principles essential to an informed, intelligent and just decision." (*People v. Lara* (2001) 86 Cal.App.4th 139, 165 [103 Cal.Rptr.2d 201]; *In re Cortez* (1971) 6 Cal.3d 78, 85-86 [98 Cal.Rptr. 307, 490 P.2d 819].) Thus, a superior court abuses its discretion when it fails to consider relevant factors. (See *Visco v. Abatti* (1983) 144 Cal.App.3d 904, 907 [192 Cal.Rptr. 833].) To apply these principles, we must determine (1) what facts are material to the approval of a settlement under section 708.440, and (2) whether, in this case, the superior court knew and considered those facts.

### A. *Facts Relating to Evasion of the Lien Are Material*

■ A lien under Article 5 reaches the judgment debtor's right to both money and property. (§ 708.410, subd. (a)(2).) Therefore, if Oldham received rights to the Jojoba Property under the settlement, Lienholder's lien should have reached those property rights.

One purpose of the lien is to establish and preserve the judgment creditor's priority to the money and property the judgment debtor may receive from the pending action. (Legis. Com. com., 17 West's Ann. Code Civ. Proc. (1987 ed.) foll. § 708.410, p. 467.) This legislative purpose is best served if a lien obtained under Article 5 is an effective remedy for judgment creditors. To provide an effective remedy, we conclude Article 5 must be implemented to prevent the judgment debtor, with or without the active assistance of other parties to the settlement agreement, from structuring a settlement so it receives benefits while evading the lien of the judgment creditor, absent appropriate equitable considerations.

---

*See footnote, *ante*, page 421.

This conclusion is based on (1) the self-evident principle that, when a judgment debtor can evade a lien and incur no consequences, the lien will not provide an effective remedy to the judgment creditor, (2) case law arising under the predecessor statute, and (3) analogies to other areas of law where a court has the discretion to approve a settlement.

The Fourth District Court of Appeal has recognized that one purpose of the predecessor of Article 5, former section 688.1, was to prevent certain types of collusion that result in harm to the judgment creditor's interests. (*Abatti v. Eldridge* (1980) 112 Cal.App.3d 411, 415 [169 Cal.Rptr. 330] [disapproval of the settlement upheld].) In that case, the judgment creditor's interests were harmed because he would have received nothing under the settlement negotiated between the judgment debtor and certain of his creditors. (*Ibid.*) The Fourth District stated that "the court should have all relevant and necessary information to determine the size of the pie, the slice of the pieces, and when it is appropriate for one creditor to go hungry." (*Id.* at p. 416.) The court also observed that some facts become conspicuous by their omission. (*Ibid.*)

The Fourth District's analysis remains instructive even though former section 688.1 was repealed by the enactment of Article 5. Although the California Law Revision Commission's comments to Article 5 do not explicitly address settlements designed to evade the lien of the judgment creditor, nothing in the comments suggests that lien evasion is no longer a factor material to analyzing the equities of the settlement. The commission was aware of the *Abatti v. Eldridge* decision and cited it to support certain points. (See Legis. Com. com. and Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc., *supra*, foll. §§ 708.410, 708.440, pp. 467, 473.) If the prevention of collusion and lien evasion were no longer important for purposes of Article 5, we infer that the commission would have explicitly commented on such a significant change. Also, neither Oldham nor Defendants have cited to any legislative history or other authority stating that lien evasion is immaterial to the approval of a settlement under section 708.440.

Our conclusion that lien evasion is material and must be considered by the superior court is consistent with the rules of law applied to other situations where courts are requested to exercise their discretion in the approval of settlements. In approving the settlement of a class action, a court exercises its discretion in determining whether the settlement is fair and reasonable. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 244-245 [110 Cal.Rptr.2d 145].) To exercise this discretion and protect the interests of persons who are not parties to the settlement agreement, the court must consider evidence that enables it to reach a reasoned judgment that the

agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties. (*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1801 [56 Cal.Rptr.2d 483].)

When determining whether a settlement was made in good faith within the meaning of sections 877 and 877.6, a trial court exercises its discretion. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1995) 38 Cal.App.4th 1337, 1349 [45 Cal.Rptr.2d 581].) Among the relevant factors a court must consider in exercising that discretion is the existence of collusion or fraud by the settling parties that might harm the interests of the nonsettling defendants. (*Ibid.*) Thus, the case law from this context and the settlement of class actions illustrates that courts exercising their discretion in approving or disapproving a settlement should consider whether the settling parties have adopted settlement terms that adversely affect the rights of others.

■ In light of the foregoing, we hold that facts regarding whether a settlement was structured to evade the lien of the judgment creditor are material to the approval of a settlement under section 708.440. The particular facts relevant to evasion of the lien will vary from case to case because of differences in the property interests involved, variations in the relationships among the entities involved, and differences in the way transfers of interests in property are structured. To make an informed and intelligent decision about the settlement, the superior court should have sufficient information to understand who benefits from the transfers contemplated by the proposed settlement and how they are benefited. In other words, the superior court must understand the size of the settlement pie, how the pie is sliced, and who is getting which slice. (See *Abatti v. Eldridge, supra,* 112 Cal.App.3d at p. 416.)

Once the superior court knows if the judgment debtor or an entity closely connected to the judgment debtor is getting a settlement slice beyond the reach of the judgment creditor's lien, the court can then determine if equitable considerations justify the evasion of the lien, if terms and conditions should be imposed upon the settlement, or if approval of the settlement should be withheld.

## B. *The Record Does Not Contain Material Facts*

■ In this case, the record lacks basic information about who actually benefits from the transfers of interests in the Jojoba Property contemplated by the settlement agreement. The record shows that the settlement would permit, but not require, Oldham to record the Grant Deed and hold title to the Jojoba Property as "Ernest Oldham, Trustee, for Investors of Capital

Investment Fund Inc, II." P&D stated at the March 18, 2002, hearing that the arrangement achieved "clear title to that property so that Mr. Oldham and a few of the other investors from that investment fund would get the benefit of clear title to this property which will be sold sometime." However, this statement by counsel is not evidence[10] and is not supported by a declaration, testimony or documentary evidence.

Furthermore, the record on appeal does not reveal anything about Capital Investment Fund, Inc. II, its investors, or a trust that may have been established for the investors. Consequently, we cannot tell if Capital Investment Fund, Inc. II,[11] its investors or the trust[12] presently exist or existed in the past. If they exist, there are no documents in the record that explain their relative rights and responsibilities. This lack of information is significant because if the trust does not exist or if there are no beneficiaries to the trust other than Oldham, he may be able to dispose of the Jojoba Property for his sole benefit without incurring liability to third parties.

Alternatively, if the trust and other beneficiaries exist, there is no evidence showing why it is equitable for the investors to realize benefits from Oldham's settlement of his claims against Defendants. Notwithstanding the extrapolations of Oldham's counsel, the reference in the Grant Deed to a trustee for investors does not establish that the trust or the investors actually exist, much less that it is equitable for them to benefit from the settlement while Lienholder receives no benefit from the transfer of interests in the Jojoba Property or the payment of property taxes. Moreover, there is no evidence that equitable considerations justify Oldham's receiving benefits in a capacity as a beneficiary of the trust beyond the reach of the lien of his judgment creditor.

Because of these omissions from the record, the superior court did "not" know facts material to the proposed transfer of interests in the Jojoba Property. Without knowledge of the material facts showing who was getting

---

[10]If the statement had been submitted as evidence, it may have been inadmissible. (See Evid. Code, § 702 [lack of personal knowledge of the witness]; Evid. Code, § 1523, subd. (a) [testimony about the contents of written documents; this case may involve trust documents and documents showing the investors' existence and interest]; Prob. Code, § 15206 [trust relating to real property must be evidenced by a written instrument or arise by operation of law].)

[11]If Capital Investment Fund, Inc. II is a fictitious business name, only a corporation may use it because of the inclusion of the term "Inc." (Bus. & Prof. Code, § 17910.5.)

[12]The five essential elements of a noncharitable express trust are (1) a competent trust-maker, (2) trust intent, (3) trust property, (4) trust purpose, and (5) at least one beneficiary. (*Estate of Heggstad* (1993) 16 Cal.App.4th 943, 947 [20 Cal.Rptr.2d 433]; Prob. Code, §§ 15201-15203, 15205; see Maurer & Friedemann, *Lending to Family Living Trusts, supra*, 52 Consumer Fin. L.Q. Rep. at p. 199.)

what slice of the settlement pie,[13] the superior court could not consider the equities of a settlement that excluded Lienholder from reaching any interest in the Jojoba Property. Thus, the trial court could not have properly exercised its discretion under section 708.440 in approving the settlement.

Oldham implies that the superior court's orders must be upheld because Lienholder failed to provide "any evidence at all regarding the nature of Oldham's beneficial interest, and whether that beneficial interest would be subject to the judgment lien." However, Oldham is (1) the proponent of the settlement, (2) the party who chose the structure of the settlement, and (3) the party with the best access to information about Capital Investment Fund, Inc. II, the existence of a trust, Oldham's duties as trustee, and Oldham's rights as a beneficiary. In view of these facts, we conclude that Oldham is the party responsible for providing the court with sufficient evidence to understand the settlement provisions addressing the Jojoba Property.

This conclusion is based in part on an analogy to the approval of a settlement of a class action. In that context, where the superior court is exercising its discretion and is determining if the settlement is fair and reasonable, "[t]he burden is on the proponent of the settlement to show that it is fair and reasonable." (*Wershba v. Apple Computer, Inc.*, *supra*, 91 Cal.App.4th at pp. 244-245.) ▄ Just as a burden is placed on the proponent seeking approval of a class action settlement—a context in which the trial court must scrutinize the settlement for collusion and overreaching—a burden to produce evidence should be borne by the proponent seeking approval of a settlement under section 708.440. At a minimum, the proponent should provide the court with enough facts to understand the entities involved, the property interests being transferred, and the relationship between the entities and those property interests. These facts are among those that "become conspicuous by their omission" (*Abatti v. Eldridge*, *supra*, 112 Cal.App.3d at p. 416), particularly when attorneys draw a bleak picture of their client's gains from the settlement. (*Ibid.*)

▄ Oldham also asserts that the record shows the existence of competing claims to the Jojoba Property from the investors of Capital Investment Fund, Inc. II and that Lienholder's position would require the court to resolve all competing claims to the Jojoba Property before approving the settlement. This exaggeration is not convincing. Assuming for the sake of argument that the investors exist and they have some claim against the Jojoba Property, the superior court need not resolve all competing claims to

---

[13]The superior court's own comments reveal that it did not know or consider who was getting the benefits of the slice of the settlement pie that required Defendants to pay the property tax due on the Jojoba Property.

understand whether or not Oldham is receiving a beneficial interest[14] in the Jojoba Property and whether or not it is equitable for Oldham to receive that interest free of Lienholder's lien. If the court has an understanding of Oldham's interests in the Jojoba Property and the equities involved, it might be able to subject the settlement to "such terms and conditions as [it] deems necessary" (§ 708.440, subd. (b)) to protect Lienholder's lien and account for any unresolved competing claims. In addition, Oldham's argument is not convincing because it is akin to saying that because uncertainty exists about some aspect of the subject matter of the settlement, the proponent has no responsibility to explain other aspects of the settlement to the court. We reject this argument because it would allow the judgment debtor to obscure the substance of the settlement by failing to produce evidence sufficient for the court to understand the actual impact of the settlement provisions.

Accordingly, the order approving the settlement agreement shall be reversed and the matter remanded to the trial court for further consideration.

## IV. *Priority of Lien for Attorney Fees*

The order approving the settlement directed P&D to receive $30,000 for attorney fees and $3,319.10 for costs in accordance with the lien created by its agreement with Oldham. The balance of the cash proceeds was to be paid to Lienholder under its lien as a judgment creditor.

■ Lienholder recognizes the general rule that the contractual lien of an attorney created before the action is filed has priority over the lien a judgment creditor obtains against the recoveries a judgment debtor may realize from a pending action. (See *Pangborn Plumbing Corp. v. Carruthers & Skiffington, supra,* 97 Cal.App.4th at pp. 1051-1052; see *Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 531 [179 Cal.Rptr. 902, 638 P.2d 1299, 34 A.L.R.4th 657] [attorney's contractual lien was entitled to priority over the judgment creditor's lien perfected under former Code Civ. Proc., § 688.1].) However, Lienholder argues the general rule does not apply in this case because of the inequities of rewarding attorneys who helped a judgment debtor avoid a judgment lien. To support this argument, Lienholder cites Civil Code section 2897[15] and a case that says a court should consider the equities of the lienholders before applying California's first in time rule. (See *Bluxome Street Associates v. Fireman's Fund Ins. Co.* (1988) 206 Cal.App.3d 1149, 1158 [254 Cal.Rptr. 198].)

---

[14]Albeit the property interest may be subject to contingencies.

[15]Civil Code section 2897 provides: "Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia."

Because this case is remanded to the superior court for further information about the transfer of the interest in real property and that information might be relevant to the equities of recognizing the priority of the lien of P&D,[16] the portion of the order approving the disbursement to P&D of part of the cash proceeds from the settlement also is reversed and remanded. If the settlement is approved, or is approved subject to terms and conditions imposed by the superior court, then the equities relating to the lien of P&D may be considered. If the settlement is not approved, the priority of P&D's lien becomes moot until another settlement is proposed or a judgment is entered.

V. *The Order Denying the Motion Under Section 708.470 Is Also Reversed*

The superior court denied Lienholder's motion on the ground that it had already decided all of the relevant issues when it granted the motion under section 708.440 for approval of the settlement. Because the order approving of the settlement is reversed and remanded for further consideration, we also reverse the order denying the motion of Lienholder.

### DISPOSITION

The March 27, 2002, order approving the settlement and directing the disbursement of cash proceeds is reversed and remanded for further consideration. The order denying the motion to enter judgment under section 708.470 is reversed. Appellant shall recover its costs on appeal.

Vartabedian, Acting P. J., and Levy, J., concurred.

---

[16]For example, if P&D's expressed and implied representations to the court about the existence of a trust, investors, and competing claims are inaccurate and P&D had some level of culpability (e.g., negligence, recklessness or knowledge of falsity) in making the representation, the superior court may consider that culpability in determining whether or not it is equitable for the lien of P&D to have priority over the lien of Lienholder.