Filed 2/21/25  Vivera Pharmaceuticals v. GD Laboratory Consulting CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| VIVERA PHARMACEUTICALS, INC., et al., | |
| Plaintiffs and Respondents, | G063498 |
| v. | (Super. Ct. No. 30-2021-01207052) |
| GD LABORATORY CONSULTING, LLC, et al., | O P I N I O N |
| Defendants; | |
| BLAINE HOLDING & DEVELOPMENT, LLC, | |
| Claimant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Nathan Scott, Judge. Affirmed. Motion to strike denied.

Law Offices of Mark J. Yost and Mark J. Yost for Claimant and Appellant.

Law Office of Saied Kashani and Saied Kashani for Plaintiff and Respondent Vivera Pharmaceuticals, Inc.

Paul Edalat, in pro. per., for Plaintiff and Respondent Paul Edalat.

\* \* \*

Blaine Holding & Development, LLC asserted a judgment lien in the underlying litigation and appeals from a trial court order approving the litigants' settlement of a business dispute. The order resulted in no recovery on the lien, and Blaine contends the court erred as a matter of law by approving the settlement. We are not persuaded that an abuse of discretion occurred, and we affirm the order.

## FACTS

### I.

#### PRELITIGATION EVENTS

In April 2021, the parties in this matter—Vivera Pharmaceuticals, Inc., GD Laboratory Consulting, LLC, and others—formed a joint business venture named Focal Point Laboratories, LLC, to operate a business that provided testing for COVID-19. The business did not operate beyond June 2021, and, on June 22, 2021, Vivera's chief executive officer, Paul Edalat, withdrew $600,000 from Focal Point's bank account.

### II.

#### THE UNDERLYING LITIGATION

The next day, June 23, 2021, Vivera initiated the underlying litigation by filing a complaint against Focal Point and others, alleging a single cause of action for accounting. The next day, Focal Point filed its own complaint against Vivera and others, and the two lawsuits were ultimately consolidated. For purposes of this appeal, Vivera and Edalat ultimately filed

2

an operative second amended complaint that alleged six causes of action. Of those, Vivera was the plaintiff for two: an accounting cause of action and a fraudulent concealment cause of action—Edalat alone asserted the other four.

In July 2021, the trial court issued an order on the parties' stipulation to appoint a receiver to take possession of Focal Point's assets and manage them during litigation (the receivership order). Inter alia, the receivership order approved the parties' stipulation to establish the receivership estate as "monies generated" during a "Covered Time Period," starting in March 2021 and ending in June 2021.

Around the same time, in a different lawsuit, Blaine secured a September 2021 judgment for about $400,000 against Vivera, based on a breach of a lease contract. Based on that judgment, Blaine filed a November 2021 notice of lien in this matter, pursuant to Code of Civil Procedure section 708.410, which we quote from further below.[1]

In May 2023, Focal Point filed a motion to enforce the receivership order. Specifically, Focal Point asked the trial court to order Vivera to transfer to the receiver the $600,000 Edalat had withdrawn in June 2021. The court granted the motion by ordering Vivera to deliver the money to the receiver within 10 days (the return order).

Vivera never sent the money to the receiver. Instead, two months later, in October 2023, Vivera, Edalat, Focal Point, and several other litigants reached a settlement of this matter. Inter alia, the parties agreed that: (1) the parties would mutually release claims against each other; (2) Focal Point

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

3

would receive $1.5 million from the money in the receiver's possession; (3) Edalat would receive $600,000 from the same source; and (4) Vivera would not receive any money "because it ha[d] already received the $600,000 from Focal Point prior to the filing of th[e] action" underlying this appeal.

The parties' settlement agreement was explicitly conditioned upon the trial court's approval, "due to the existence of liens." Accordingly, Vivera filed a motion for the court's approval of the settlement, stating that the "$600,000 represent[ed] roughly a third of the net joint venture profits and [was] a reasonable approximation of Vivera's contractual 33% share of said profits." Blaine did not dispute the characterization and instead asserted it was an irrelevant point, particularly given Vivera's wrongful noncompliance with the return order.

After considering filings and oral arguments, the trial court granted the motion to approve the settlement and did not provide for payment on Blaine's lien (the approval order). The court found that "the parties [did] not inequitably structure[ ] the settlement to evade liens or play favorites among judgment creditors." The court reasoned that "Vivera receive[d] nothing by the settlement other than a release" and explained that even if Vivera had complied with the return order prior to the parties' settlement (by returning the $600,000 previously withdrawn), the court would still arrive at the same decision to approve the settlement. Blaine timely appealed.[2]

---

[2] We agree with the parties that the approval order is appealable. (See *Bank of California v. Thornton–Blue Pacific, Inc.* (1997) 53 Cal.App.4th 841, 843–846 [trial court order deciding priorities of competing claims to litigant's money appealable was final judgment "in legal effect"].)

DISCUSSION

Blaine contends that we should review the approval order de novo and conclude it was erroneous because the ruling is "directly contrary to the plain language and purpose of [s]ection 708.410 et seq." and "permit[s] a judgment debtor to benefit financially while evading a valid lien."

I.

STANDARD OF REVIEW AND APPELLATE REVIEW PRINCIPLES

We review the application of statutory language to undisputed facts de novo and an exercise of discretion for abuse of discretion. (*Pangborn Plumbing Corp. v. Carruthers & Skiffington* (2002) 97 Cal.App.4th 1039, 1048–1049 (*Pangborn*).) "An abuse of discretion standard generally applies to a decision concerning the approval of a settlement under section 708.440." (*Oldham v. California Capital Fund, Inc.* (2003) 109 Cal.App.4th 421, 430 (*Oldham*), citing *Pangborn, supra*, at p. 1048.) Generally, "[d]iscretion is abused in the legal sense whenever, in its exercise, a court exceeds the bounds of reason, all the circumstances before it being considered. [Citation.]" (*Nicoletti v. Lizzoli* (1981) 124 Cal.App.3d 361, 366–367.)

II.

GOVERNING LAW

The Enforcement of Judgments Law (EJL; § 680.010 et seq.) contains section 708.410, which authorizes "[a] judgment creditor" to impose a lien based on "a money judgment against a judgment debtor who is a party to a pending action or special proceeding." (§ 708.410, subd. (a).) Two targets are specified: under subdivision (a)(1), a lien can be enforced against "[a]ny cause of action of such judgment debtor for money or property that is the subject of the action or proceeding"; and under subdivision (a)(2), a lien can also be enforced against "[t]he rights of such judgment debtor to money or

5

property under any judgment subsequently procured in the action or proceeding."

The statute is one of eight in article 5, chapter 6, division 2, title 9, part 2 of the Code of Civil Procedure (see §§ 708.410–708.480), all relating to the assertion of a judgment lien in a pending action or proceeding. The parties do not dispute that the approval order was governed by section 708.440. Its subdivision (a) provides in relevant part that "no . . . settlement . . . may be entered into by or on behalf of the judgment debtor, without . . . authorization by order of the court obtained under subdivision (b)" of the statute. (§ 708.440, subd. (a).) Subdivision (b), in turn, provides in relevant part that "[u]pon application by the judgment debtor, the court in which the action . . . is pending . . . may, in its discretion, after a hearing, make an order described in subdivision (a) that may include such terms and conditions as the court deems necessary." (§ 708.440, subd. (b).)

Both sections 708.410 and 708.440 were enacted in 1982, as part of changes to the law regarding judgment liens, which were previously codified at former section 688.1. (Stats. 1982, ch. 1364, § 2.) Both sections included comments by the Legislative Committee and the Law Revision Commission, respectively. The Commission's comment on section 708.440 states: "The provision permitting compromise, dismissal, settlement, or satisfaction pursuant to court order despite the opposition of the judgment creditor is new and has been added to prevent . . . the judgment creditor from forcing the judgment debtor to proceed with the action when the court concludes that it is in the best interests of the parties to settle. See also *Abatti v. Eldridge* [(1980)] 112 Cal.App.3d 411 (power of court to approve settlement that does not fully satisfy lien)." (Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc. (2022 ed.) foll. § 708.440, p. 286.)

6

## III.

### ANALYSIS

We review the approval order for abuse of discretion. (*Oldham, supra*, 109 Cal.App.4th at p. 430.) We are not persuaded by Blaine to review the order de novo because, although the trial court's decision involved undisputed facts, it more fundamentally rests on an exercise of discretion as to interpretating the equitable context—covering two years of litigation— within which the multi-party settlement terms were reached. The court's approval of the parties' settlement did not turn on a straightforward application of statutory language, but instead on the balancing of equities implicated by the settlement. (*Pangborn, supra*, 97 Cal.App.4th at pp. 1048– 1049.)

Blaine contends our appellate review should eschew deference to the trial court because of the "plain language" in section 708.410, subdivision (a)(2), governing its lien enforcement rights. The contention fails because that subdivision, quoted earlier, specifically covers liens on "[t]he rights of [a] judgment debtor to money or property under any *judgment* subsequently procured in the action or proceeding" where the lien is asserted. (*Ibid.*, italics added.) The subdivision is of no help to Blaine because there was no judgment in this matter that decreed a right to money or property in favor of judgment debtor Vivera.

Instead, Blaine's lien was governed by the statute's preceding paragraph—section 708.410, subdivision (a)(1)—which, also quoted earlier, provides that a money judgment may attach to "[a]ny *cause of action* of [a] judgment debtor for money or property that is the subject of the action or proceeding." (Italics added.) As noted, Vivera asserted two causes of action in its operative complaint: for an accounting and fraudulent concealment. They

7

are what Blaine's lien could have attached to, pursuant to subdivision (a)(1) of section 708.410, and not its subdivision (a)(2) as Blaine argues.

Blaine has not demonstrated that the trial court erred by declining to enforce Blaine's lien against the parties' settlement terms. As discussed above, the court found that Vivera gained no more than a release of claims because the court characterized the $600,000 Edalat withdrew prior to litigation as the status quo. This was a reasonable interpretation of the facts presented to the court, which found that Vivera did not obtain any money or property based on either of its causes of action.

By contrast, a closer argument could be made based on the hypothetical situation that the trial court included in its discussion—i.e., where Vivera complied with the return order and the parties subsequently settled on terms that included the receiver paying $600,000 to Vivera. In such a situation, Blaine's reliance on *Gilman v. Dalby* (2021) 61 Cal.App.5th 923 could be more persuasive. There, an appellate court held that an order for restitution *in favor* of a judgment debtor was a "judgment" against which a lien could attach, pursuant to the authority of section 708.410, subdivision (a)(2), not the governing subdivision here. (*Gilman*, at p. 931.)

In the above hypothetical situation, Blaine might more persuasively analogize *Gilman*. But based on the actual circumstances that were presented to the trial court, *Gilman* does not support Blaine's argument for a reversal because it is undisputed that no money or property was ordered to be delivered to the judgment debtor, as in *Gilman*.

Similarly, *Abatti v. Eldridge, supra*, 112 Cal.App.3d 411 (*Abatti*) and *Oldham, supra*, 109 Cal.App.4th 421—two other cases Blaine claims as analogous—do not support a reversal in this matter. As noted, *Abatti* involved the appellate court's affirmance of a trial court's decision to deny a

8

motion to approve a settlement. The appellate court's analysis rested on an interpretation of former section 688.1 (*Abatti*, at p. 415), which was more restrictive than section 708.440. Indeed, the Law Revision Commission's comment to section 708.440, quoted earlier, explicitly cited to *Abatti* for the change to judgment lien rules, allowing for more court discretion "to prevent . . . the judgment creditor from forcing the judgment debtor to proceed with the action when the court concludes that it is in the best interests of the parties to settle." (Cal. Law Revision Com. com., 17 West Ann. Code Civ. Proc. (2022 ed.) foll. § 708.440, p. 286.)

Also, the settlement terms at issue in *Abatti* included payments of new money by litigants (as opposed to from a fund being held by a receiver as in this case) to third parties that directly benefited the judgment debtors there. (*Abatti, supra*, 112 Cal.App.3d at p. 414 [terms included litigants paying $30,000 in "delinquent property taxes"]; see Rev. & Tax. Code, § 2186 ["Every tax has the effect of a judgment against the person"].) Given these distinctions, there is no analytical conflict in concluding that the proposed settlement in *Abatti* was reasonably rejected and reasonably approved in this matter. (*Nicoletti v. Lizzoli, supra*, 124 Cal.App.3d 361, 366–367 [on abuse of discretion standard].)

As to *Oldham*, that opinion held that a trial court's decision approving a settlement should be reversed because the record showed the court was not presented with sufficient information to render an informed decision. (*Oldham, supra*, 109 Cal.App.4th at p. 425.) That is not the situation in this matter. Moreover, *Oldham* involved a settlement where the judgment debtor was to receive, inter alia, a direct payment of $75,000. (*Id.* at p. 426.) Both of these distinctions render the case inapposite. Accordingly, neither *Abatti* nor *Oldham* supports Blaine's argument for reversal.

9

In sum, Blaine has not shown the trial court abused its discretion by approving a multi-party settlement that did not provide for payment on Blaine's judgment lien. (§ 708.440, subd. (b).) Blaine has not shown that the court's characterization of facts—premised on a finding that the judgment debtor had not obtained any money or property on its asserted causes of action—exceeded the bounds of reason or disregarded uncontradicted evidence. Given our conclusion, we do not address the parties' disputes as to (1) whether this appeal should be dismissed for Blaine's failure to name certain trial court parties as respondents in this appeal and (2) whether Blaine forfeited its right to raise its appellate arguments in this court.[3] In the same vein, we deny Blaine's motion to strike certain portions of Vivera's respondent's brief as immaterial to our analysis. Finally, we note that nothing in this opinion is to be construed as precluding other avenues for Blaine to enforce its judgment creditor rights against Vivera.

---

[3] For example, Vivera argues this appeal should fail because Blaine did not object to trial court orders about the receivership that followed the approval order challenged in this appeal.

## DISPOSITION

The trial court's November 27, 2023, order is affirmed.

Respondents are entitled to recover their costs on appeal.


O'LEARY, P. J.

WE CONCUR:


MOTOIKE, J.


DELANEY, J.