[No. B176985. Second Dist., Div. Seven. Nov. 21, 2005.]

CASA EVA I HOMEOWNERS ASSOCIATION, Plaintiff and Respondent,
v.
ANI CONSTRUCTION & TILE, INC., et al., Defendants and Respondents;
PAYKAR CONSTRUCTION, INC., Claimant and Appellant.

COUNSEL

Robert John; Kane Law Firm and Brad S. Kane for Claimant and Appellant.

Milam & Larsen, Jeffrey L. Milam, Paul A. Larsen and Paul W. Wong for Plaintiff and Respondent.

Cho & Brown and Gary M. Schumacher for Defendant and Respondent Ani Construction & Tile, Inc.

Grace Brandon Hollis, Graham S. P. Hollis, Kirk D. Hanson and Robert J. Walters for Defendants and Respondents Tomkins Industries, Inc., and Lasco Bathware, Inc.

OPINION

WOODS, J.—

## SUMMARY

A judgment creditor appeals from the trial court's denial of its motion for an order for satisfaction of its judgment lien under Code of Civil Procedure section 708.470.[1] We affirm.

## FACTUAL AND PROCEDURAL SYNOPSIS

In July 1999, the Casa Eva I Homeowners Association (Casa Eva) filed a complaint for breach of implied warranty of merchantability, breach of implied warranty of fitness for intended purpose, strict liability and negligence against project developer Overland Development and its individual partners for the defective construction of the Casa Eva property.[2] Casa Eva later amended its complaint to name general contractor Spilat Construction Corporation and numerous subcontractors. In April 2000, Spilat filed a cross-complaint for express indemnity, equitable indemnity and equitable contribution.

In May, in an unrelated contract action, Paykar Construction, Inc., obtained a judgment against Spilat (general contractor in the Casa Eva construction defect litigation at issue here) in the amount of $259,813 plus attorneys' fees,

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

[2] Casa Eva II Homeowners Association filed a similar complaint the same day, and its action was later consolidated with this one.

costs and interest. In October, Paykar filed a "notice of judgment lien on personal property" against Spilat in the amount of $471,387.60 in this action. The notice contained the notations: "Reference: Code of Civil Procedure sections 697.510, 697.550 and 697.570."

In January 2002, Paykar filed a motion to intervene in the Casa Eva litigation which the trial court denied because it found, although Paykar had a judgment lien, Paykar had failed to show an interest in the action. Nevertheless, all parties to the action were ordered to include Paykar on its service lists for all documents filed with the court.

After Casa Eva and the defendants prepared and exchanged repair estimates, mediation sessions were held in January and February, but some of the defendants either did not attend mediation or were unwilling to contribute an amount that would yield a global settlement. Casa Eva, Spilat, the developer and a number of subcontractors reached a settlement which included the following terms: (1) Spilat's insurers (Scottsdale Insurance Company and West American Insurance Company) would pay Casa Eva $267,750 on Spilat's behalf and the remaining settling defendants (including the developer (paying $150,000) and several subcontractors) would pay $382,250 (for a total of $650,000 to Casa Eva); (2) Casa Eva would assign its causes of action against all the nonsettling parties to Spilat's insurers; (3) all settling parties released and dismissed their actions against each other except for Casa Eva's claims and Spilat's claims against the nonsettling subcontractors; and (4) the settlement would be conditioned on the court's determination that the settlement was in good faith under section 877.6 as well as the court's approval of the settlement pursuant to section 708.440, subdivision (b) determining that no consideration paid or received by Spilat's insurers was subject to Paykar's lien against Spilat.[3]

In May, Spilat (joined by Overland, the developer) filed a motion for determination of good faith settlement and "request that Paykar['s] judgment lien be deemed not applicable to this settlement." Three nonsettling subcontractors and Paykar filed opposition. After argument on the first hearing date (June 28), the hearing was continued for 10 days (to July 8) for the parties to clarify for the court "who's going to be left" and "for what money." At the time of the continued hearing, the insurers, as assignees of Casa Eva's claims, stipulated that their recovery against AAA Gonzalez, Inc., for stucco defects would be limited to $350,000 and that their recovery against the subcontractors connected to master bathroom defects (Lasco Bathware; Tomkins Industries, Inc.; Familian Pipe & Supply and Ani Construction & Tile) would be

---

[3] Spilat's expert determined that Spilat had overpaid its liability, and Spilat asserted that it had "overpaid at 5%" ($12,750).

limited to $500,000. The trial court granted the motion for good faith settlement on these terms and approved the settlement pursuant to section 708.440.[4]

In September, Spilat's insurers (now prosecuting the action in Casa Eva's name), Spilat and AAA Gonzalez entered into a settlement which provided: (1) AAA Gonzalez would pay the insurers $99,000; (2) Casa Eva, Spilat and AAA Gonzalez released and dismissed their actions against each other, except for Casa Eva's actions and Spilat's actions against the nonsettling parties; and (3) the settlement was conditioned on the court's determinations that the settlement was in good faith under section 877.6 and approved pursuant to section 708.440, subdivision (b) such that no consideration paid or received by the insurers was subject to the judgment lien against Spilat. AAA Gonzalez filed a motion for determination of good faith settlement (only) which was approved in November.

In April 2003, Spilat filed a chapter 7 bankruptcy petition resulting in an automatic stay of the action. At a voluntary settlement conference in June, the insurers and the remaining subcontractors reached a settlement which provided: (1) the remaining defendants would pay the insurers $242,500; (2) the entire action would be dismissed with mutual releases of claims; and (3) the settlement was conditioned on a lifting of the bankruptcy stay and determinations that the settlement was in good faith and no consideration paid or received by the insurers was subject to Paykar's judgment lien.

The insurers obtained a stipulation from Spilat's trustee in bankruptcy for relief from the bankruptcy stay. The stipulation contained the following recitals: "G. Debtor's Insurers have been providing insurance coverage for the Action, and are currently paying the costs of defense associated with the Action. Debtor's Insurers have been pursuing the remaining subcontractor

---

[4] Section 708.440 provides as follows:

"(a) Except as provided in subdivision (c) of Section 708.410, unless the judgment creditor's money judgment is first satisfied or the lien is released, the judgment recovered in the action or special proceeding in favor of the judgment debtor may not be enforced by writ or otherwise, and no compromise, dismissal, settlement, or satisfaction of the pending action or special proceeding or the judgment procured therein may be entered into by or on behalf of the judgment debtor, without the written consent of the judgment creditor or authorization by order of the court obtained under subdivision (b).

"(b) Upon application by the judgment debtor, the court in which the action or special proceeding is pending or the judgment procured therein is entered may, in its discretion, after a hearing, make an order described in subdivision (a) that may include such terms and conditions as the court deems necessary. The application for an order under this subdivision shall be made on noticed motion. The notice of motion shall be served on the judgment creditor. Service shall be made personally or by mail."

Ani Construction and Tile challenged this ruling in a petition for writ of mandamus which we summarily denied. (*Ani Tile v. Superior Court* (Aug. 6, 2002, B160470).)

defendants in subrogation as well as in the name of Plaintiffs (via assignment of the causes of action) for recovery of the monies paid, including defense costs and attorney fees, to Plaintiffs.

"H. Debtor will not be paying any insurance deductible with respect to the Casa Eva Action and Debtor has not nor will [it] ever receive any of [the] settlement proceeds related to the Insurers' subrogation action. Debtor does not possess any monetary or non-monetary interest in the Casa Eva Action. The Insurers are pursuing their subrogation rights in the name of Debtor in accordance with the terms of the Debtor's insurance policies."

The insurers then moved the bankruptcy court for relief from the bankruptcy stay, serving all parties and Paykar. As grounds for relief, the insurers stated: "The claim is insured. Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor(s) or estate property." No opposition was filed, and, in November, the bankruptcy court granted the motion, "provided no recovery against debtor or debtor's estate without further order of this Court."

In February 2004, Casa Eva and Spilat filed another motion for good faith settlement and dismissal of all cross-complaints which the trial court granted. Later that month, Casa Eva filed notice of intent to distribute settlement funds (with service on Paykar), and on March 22, all settlement proceeds were distributed to the insurers as Casa Eva's assignees; "no funds were ever distributed to either Spilat or Spilat's counsel."

Two months later (on May 14), Paykar filed its "Motion Pursuant to [section] 708.470 for Order to Apply Debtor's Money, Property and Other Rights Toward Satisfaction of Lien, for Order Restraining Property and for Entry of Judgment Against Transferors of Property Subject to Lien." Casa Eva and Spilat filed opposition (with joinders by some of the subcontractors involved in the third settlement).

In June, the trial court issued a tentative ruling that became the order of the court: "Denied. Paykar is not a party to this action and has no standing to make this motion in this case. In addition, the money transferred was not subject to any lien. The money transferred was the money owned by the opposing parties. Spilat had no control and never assumed control over the money. The money was not paid to Spilat or its attorney. Thus, Paykar is not

entitled to any relief under . . . section 708.470 because it has no standing in this action, because the money transferred was not subject to Paykar's lien, and because no money was transferred to Spilat."[5] Paykar appeals.

## DISCUSSION

### I. *Standard of Review.*

"Generally speaking, a trial court's approval of a settlement subject to certain conditions related to a judgment lien is reviewed under an abuse of discretion standard. Section 708.440, subdivision (a), provides that any party may seek a court order authorizing a compromise, settlement, dismissal or satisfaction of the pending action in lieu of the written consent thereto of the judgment creditor. In other words, the trial court *may* order an action subject to a judgment creditor's lien compromised on such terms as it thinks are necessary. [Citations.] However, its power to impose terms is limited by the fact that it is an abuse of discretion for a trial court to make an order that deprives any party of the legal rights to which it is entitled in terms of the priority of its lien, in the absence of appropriate equitable considerations." (*Pangborn Plumbing Corp. v. Carruthers & Skiffington* (2002) 97 Cal.App.4th 1039, 1049 [119 Cal.Rptr.2d 416], fn. omitted (*Pangborn*).)

"[However, s]ection 708.470, subdivision (c) provides 'If the court determines that a party (other than the judgment debtor) having notice of the lien created under this article has transferred property that was subject to the lien or has paid an amount to the judgment debtor that was subject to the lien, the court *shall* render judgment against the party in an amount equal to the lesser of the following: [¶] (1) The value of the judgment debtor's interest in the property or the amount paid the judgment debtor. [¶] (2) The amount of the judgment creditor's lien created under this article.' " (*Pangborn, supra,* 97 Cal.App.4th at p. 1049.) In that case, the question on appeal is whether or not, as a matter of law, the trial court complied with the applicable statutory law. (*Ibid.*)

"These judgment lien statutes are subject to strict construction because they are purely the creation of the Legislature. [Citations.] Thus, where a statute requires a court to exercise its jurisdiction in a particular manner, follow a particular procedure, or be subject to certain limitations, an act beyond those

---

[5] The first ground for denial was incorrect. Under section 708.430, subdivision (b), "For purposes of Sections 708.450 [claim of exemption by judgment debtor] and 708.470, a judgment creditor shall be deemed to be a party to the action or special proceeding even though the judgment creditor has not become a party to the action or proceeding under subdivision (a) [providing court, in its discretion, may allow judgment creditor to intervene in the action]."

limits is in excess of its jurisdiction and void." (*Pangborn, supra,* 97 Cal.App.4th at p. 1056; *Epstein v. Abrams* (1997) 57 Cal.App.4th 1159, 1167 [67 Cal.Rptr.2d 555] (*Epstein*).)

## II. *Paykar Was Not Entitled to Relief Under Section 708.470.*

First, Paykar's notice of lien was a form "notice of judgment lien on personal property" against Spilat.[6] It specifically "[r]eference[d] Code of Civil Procedure sections 697.510, 697.550 and 697.570." It did not, however, comply with the mandatory requirements of section 708.420. More particularly, Paykar's notice contained none of the requisite warnings that Paykar was invoking the provisions of section 708.410 et seq. and specifying the necessary procedures to be followed in settling with Spilat as judgment debtor as well as the consequences of failing to do so.[7] None of these warnings were required under sections 697.510, 697.550 and 697.570, and the reference in Paykar's notice to these sections did nothing to inform the parties to the Casa Eva litigation of the procedures to be followed or the risks in failing to do so. As a result, it appears Paykar's notice was not effective to

---

[6] A judgment lien on personal property reaches only specified types of personal property "in which a security interest could be perfected by filing a financing statement with the Secretary of State under the Commercial Code"—accounts receivable, chattel paper, equipment, farm products, certain inventory and negotiable documents of title. (§ 697.530, subd. (a); see Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2005) ¶ 6:237, p. 6C-2.)

[7] Section 708.410 provides: "A judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action or special proceeding may obtain a lien under this article, to the extent required to satisfy the judgment creditor's money judgment, on both of the following:

"(1) Any cause of action of such judgment debtor for money or property that is the subject of the action or proceeding.

"(2) The rights of such judgment debtor to money or property under any judgment subsequently procured in the action or proceeding."

Section 708.420 specifies: "The notice of lien under Section 708.410 *shall* contain all of the following:

"(a) A statement that a lien has been created *under this article* and the title of the court and the cause and number of the pending action or proceeding in which the notice of lien is filed.

"(b) The name and last known address of the judgment debtor.

"(c) The name and address of the judgment creditor.

"(d) The title of the court where the judgment creditor's money judgment is entered and the cause and number of the action, the date of entry of the judgment, and the date of any subsequent renewals, and where entered in the records of the court.

"(e) The amount required to satisfy the judgment creditor's money judgment at the time the notice of lien is filed in the action or proceeding.

"(f) A *statement that the lien attaches to any cause of action of the judgment debtor that is the subject of the action or proceeding and to the judgment debtor's rights to money or property under any judgment subsequently procured in the action or proceeding.*

"(g) A *statement that no compromise, dismissal, settlement, or satisfaction of the pending action or proceeding or any of the judgment debtor's rights to money or property under any judgment procured therein may be entered into by or on behalf of the judgment debtor, and*

create a lien under this statute, as one of the subcontractors contended in the trial court and maintains in this appeal. (*Pangborn, supra,* 97 Cal.App.4th at p. 1056 ["These judgment lien statutes are subject to strict construction because they are purely the creation of the Legislature"]; and see Ahart, Cal. Practice Guide: Enforcing Judgments and Debts, *supra,* ¶ 6:1484, p. 6G-52 ["The notice must also include several warning statements to the judgment debtor (otherwise, the notice is not effective to create a lien)"], and Form: 6:AAA [approved Judicial Council form meeting these requirements].)

Even if Paykar's notice sufficed, the first two subdivisions of section 708.470 provide as follows:

"(a) If the judgment debtor is entitled to money or property *under the judgment in the action or special proceeding* and a lien created under this article exists, upon application of any party to the action or special proceeding, the court *may* order that the judgment debtor's rights to money or property under the judgment be applied to the satisfaction of the lien created under this article as ordered by the court. Application for an order under this section shall be on noticed motion. The notice of motion shall be served on all other parties. Service shall be made personally or by mail.

"(b) If the *judgment* determines that the judgment debtor has an interest in property, the court *may* order the party having custody or control of the property not to transfer the property until it can be levied upon or otherwise applied to the satisfaction of the lien created under this article."

■ Again, "[t]hese judgment lien statutes are subject to strict construction." (*Pangborn, supra,* 97 Cal.App.4th at p. 1056.) "[W]here a statute requires a court to exercise its jurisdiction in a particular manner, follow a particular procedure, or be subject to certain limitations, an act beyond those

---

*that the judgment debtor may not enforce the judgment debtor's rights to money or property under any judgment procured in the action or proceeding by a writ or otherwise, unless one of the following requirements is satisfied:*

"(1) *The prior approval by order of the court in which the action or proceeding is pending has been obtained.*

"(2) *The written consent of the judgment creditor has been obtained or the judgment creditor has released the lien.*

"(3) *The money judgment of the judgment creditor has been satisfied.*

"(h) A statement that the judgment debtor may claim an exemption for all or any portion of the money or property within 30 days after the judgment debtor has notice of the creation of the lien and a statement that, if the exemption is not claimed within the time allowed, the exemption is waived." (Italics added.)

limits is in excess of its jurisdiction and void." (*Pangborn, supra,* 97 Cal.App.4th at p. 1056; see *Epstein, supra,* 57 Cal.App.4th at p. 1167.) Although Paykar relied on subdivisions (a) and (b) (in addition to subdivision (c)) of section 708.470 in its briefing, it acknowledged at oral argument that there was no "judgment" in this case. The case was settled. Without a judgment entitling Spilat to money or property or determining that Spilat had an interest in property, the trial court lacked jurisdiction to act under subdivisions (a) and (b) of section 708.470. Accordingly, at oral argument, Paykar conceded that it was operating under subdivision (c) alone.

■ Turning to subdivision (c) of section 708.470, "What *is* specifically allowed, in fact, what is specifically *mandated,* is that '*If the court determines that a party (other than the judgment debtor) having notice of the lien created under this article has transferred property that was subject to the lien or has paid an amount to the judgment debtor that was subject to the lien,* the court shall render judgment against the party in an amount equal to the lesser of the following: [¶] (1) The value of the judgment debtor's interest in the property or the amount paid the judgment debtor. [¶] (2) The amount of the judgment creditor's lien created under this article.' "[8] (*Pangborn, supra,* 97 Cal.App.4th at p. 1057, first italics in original, further italics added.) The party seeking the section 708.470 order bears the burden of persuading the court that the order should be granted. (*Brown v. Superior Court* (2004) 116 Cal.App.4th 320, 334 [9 Cal.Rptr.3d 912]; Ahart, Cal. Practice Guide: Enforcing Judgments and Debts, *supra,* ¶ 6:1506.1, p. 6G-60.)

Under subdivision (a) of section 708.410, Paykar's judgment lien extended to "[a]ny cause of action of [judgment debtor *Spilat*] for money or property" that was the subject of the Casa Eva action as well as "[t]he rights of [*Spilat*] to money or property under any judgment subsequently procured" in the Casa Eva action. Here, the court determined that Spilat received no money or property and, consequently, there was nothing subject to Paykar's lien.[9]

According to Paykar, "there is no doubt the money and the property transferred to Spilat's [i]nsurers is subject to Paykar's lien" because "Spilat and Spilat's [i]nsurers have interdependent legal rights and responsibilities

---

[8] As addressed *ante,* Paykar never gave notice of a "lien created under this article [§ 708.410 et seq.]."

[9] As the court told Paykar's counsel at the hearing on this motion, "In this case it was between the insurance carriers as we went before [apparently referring to the similar arguments made in connection with the motions for approval of the various settlements]. Spilat didn't get any money out of it. Their attorneys didn't get money out of it. Nothing. If one cent would have changed hands, I would have held it there for you. . . ."

*when it comes to Spilat's [i]nsurers' rights of subrogation* for payments made on behalf of its insured." (Italics added.) The problem is that Paykar ignores the fact that, in addition to the subrogation rights they were also entitled to pursue, the insurers obtained an assignment of *Casa Eva's* claims against the nonsettling parties, and Paykar presents no persuasive argument that the fact that the insurers pursued this alternative or that their motive was to recoup their costs of defending Spilat and paying Casa Eva on its behalf required the court to grant its motion.

■ The insurers were not obligated to pursue their subrogation rights, and Paykar identifies no legal obligation of the insurers to do so for *Paykar's* sole benefit. *(Employers Mutual Liability Ins. Co. v. Tutor-Saliba Corp.* (1998) 17 Cal.4th 632, 639 [71 Cal.Rptr.2d 851, 951 P.2d 420] ["Subrogation is a right, not an obligation"]; *New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1095 [9 Cal.Rptr.2d 469] ["because subrogation is a right, not an obligation, the insurer presumably has the option of not pursuing subrogation recovery at all"].)

■ Casa Eva was free to assign its claims against the remaining defendants, and the insurers were free to accept this assignment. "The Civil Code defines a chose or thing in action as 'a right to recover money or other personal property by a judicial proceeding.' (C[ivil] C[ode] § 953.) Choses in action are assignable when they arise out of an *obligation* or out of the *violation of a right of property.* ([Civil Code §§] 954, 1458; [citations].)" (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 720, p. 805.)

■ As the court in *Regan Roofing Co. v. Superior Court* (1994) 21 Cal.App.4th 1685, 1713 [27 Cal.Rptr.2d 62], explained: "The direct action for negligence [such as the negligence claim, among others, Casa Eva held] and the derivative action for indemnity [such as that of Spilat's insurers] constitute wholly independent rights. A plaintiff who recovers for negligent soils compaction directly from the soils subcontractor and who then recovers additional sums from that subcontractor by way of the assignment of the contractor's indemnity rights has not recovered twice, and the subcontractor has paid only once. This is because any indemnity recovery is based upon making the contractor whole for what *he* has paid the plaintiff. If the plaintiff profits it is not because the subcontractor has paid twice, but because the

plaintiff purchased the chose in action from the contractor at a good price." (See also *Bush v. Superior Court* (1992) 10 Cal.App.4th 1374, 1380 [13 Cal.Rptr.2d 382].)

In support of its argument, Paykar cites the following language from Spilat's first motion for determination of good faith settlement and request that Paykar['s] judgment lien be deemed not applicable to the settlement: "Spilat's insurers West American and Scottsdale paid Spilat's portion under their respective insurance obligations. West American and Scottsdale have accepted assignment of *Plaintiffs'* causes of action so that they may seek recovery of the insurance monies paid to Plaintiffs." (Italics added.) According to Paykar, this statement constitutes a "candid[] admi[ssion]" that the insurers "obtained their rights only by making insurance payments on behalf of Spilat." "What Spilat's counsel describes is a classic example of equitable subrogation by an insurer, which the insurer can only accomplish by standing in the shoes of the insured."

■ To the contrary, because Casa Eva assigned its rights against the remaining defendants to Spilat's insurers, the insurers stood in *Casa Eva's* shoes. "An assignment carries with it all the rights *of the assignor*. [Citations.] 'The assignment merely transfers the interest of the assignor. The assignee "stands in the shoes" of the assignor, taking [*its*] rights and remedies, subject to any defenses which the *obligor* has against the assignor prior to notice of the assignment.' " (*Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096 [4 Cal.Rptr.3d 475], italics added.) As the *Johnson* court observed, "We recognize that, through this assignment, Johnson has received something to which she would not otherwise be entitled. All we can say is, welcome to the world of assignments."[10] (*Ibid.*)

■ "[Sections 708.410 et seq.] must be implemented to prevent the *judgment debtor*, with or without the active assistance of other parties to the settlement agreement, from structuring a settlement so *it* receives benefits while evading the lien of the judgment creditor, absent appropriate equitable considerations." (*Oldham v. California Capital Fund, Inc.* (2003) 109 Cal.App.4th 421, 430 [134 Cal.Rptr.2d 744] (*Oldham*), italics added.)

---

[10] The record reveals that Casa Eva's counsel was pressing for the first settlement's approval, objecting to even a brief continuance of the hearing, because of "escrows that may fall through today here because of the delays" and "homeowners ready to chase everybody down the street with torches and rakes." The insurers bore the burden and expense of pursuing the litigation against the remaining subcontractors who had not been willing to settle by that time.

"[F]acts regarding whether a settlement was structured to evade the lien of the judgment creditor are material to the approval of a settlement under *section 708.440*. The particular facts relevant to evasion of the lien will vary from case to case because of differences in the property interests involved, variations in the relationships among the entities involved, and differences in the way transfers of interests in property are structured. To make an informed and intelligent decision about the settlement, the superior court should have sufficient information to understand who benefits from the transfers contemplated by the proposed settlement and how they are benefited. In other words, the superior court must understand the size of the settlement pie, how the pie is sliced, and who is getting which slice. (See *Abatti v. Eldridge* [(*Abatti*) (1980)] 112 Cal.App.3d [411,] 416 [169 Cal.Rptr. 330].)[11]

■ "Once the superior court knows *if the judgment debtor or an entity closely connected to the judgment debtor is getting a settlement slice beyond the reach of the judgment creditor's lien*, the court can then determine if equitable considerations justify the evasion of the lien, if terms and conditions should be imposed upon the settlement, or if approval of the settlement should be withheld." (*Oldham, supra,* 109 Cal.App.4th at p. 432, italics added.)

Here, Spilat only received the benefit to which it was entitled under its insurance policy-defense and indemnification in the Casa Eva action, free and clear of Paykar's judgment lien; according to the record, it received no inequitable benefit to Paykar's detriment. Unlike the circumstances in *Abatti, supra,* 112 Cal.App.3d at page 413, where the "settlement was an attempt to finesse the lien of a judgment creditor" in light of payments of the judgment debtor's delinquent property taxes, forgiveness of another debt and other benefits to the judgment debtor, or *Oldham, supra,* 109 Cal.App.4th at page 432, where the record lacked basic information about "who actually benefit[ed]" from transfers of interests in certain property to an investment fund and trust in which the judgment debtor appeared to have an interest, there was nothing in the record to suggest that the insurers' pursuit of Casa Eva's claims by way of the assignment of rights inured to *Spilat's* benefit in any way. Here, the record establishes that the trial court was clear on who benefited by the settlement but, as it was not Spilat or an entity closely connected with it, was satisfied that Paykar would have to go hungry. We find no error.

---

[11] "Whatever the nature of the hearing, marshaling or the elimination of the judgment creditor's lien, the court should have all relevant and necessary information to determine the size of the pie, the slice of the pieces, and *when it is appropriate for one creditor to go hungry.*" (*Abatti, supra,* 112 Cal.App.3d at p. 416, italics added.)

## DISPOSITION

The order is affirmed. Respondents are entitled to their costs on appeal.

Perluss, P. J., and Zelon, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 8, 2006, S140211. Chin, J., did not participate therein.