Filed 10/31/23  Children Solution v. Altman CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CHILDREN SOLUTION, LLC, et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>BRYAN ALTMAN, et al.,<br><br>Defendants and Respondents;<br><br>A. DOUGLAS MASTROIANNI,<br><br>Claimant and Appellant. | B317816<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV25128) |

Appeal from order of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed in part and reversed in part.

A. Douglas Mastroianni, in pro. per., for Claimant and Appellant.

Sina Law Group and Reza Sina for Plaintiffs and Respondents.

Klinedinst and Gregor A. Hensrude for Defendants and Respondents.

This appeal arises out of a yearslong dispute over an indoor children's play structure.

In September 2013, Children Solution, LLC, Natalia Teaca (Teaca), and Kristina Kutsina (Kutsina) (collectively, Children Solution) paid approximately $200,000 to purchase the assets of Kids World,[1] a children's entertainment business. The assets included a leasehold, and Children Solution believed the assets also included a large indoor play structure.

After a flood damaged the play structure, the landlord at the Kids World business location allegedly asserted that he owned the structure. As a result, Children Solution believed that Kids World's prior owners had committed fraud by representing that they owned the play structure and had authority to sell it.

Children Solution therefore retained Bryan Altman of The Altman Law Group (collectively, Altman) to sue Kids World's prior owners. Following a bench trial, the trial court found in favor of Kids World's prior owners and awarded them approximately $500,000 in prevailing party attorney fees against Children Solution.

Children Solution then sued Altman for malpractice. They eventually reached a $250,000 settlement of the malpractice action at a private mediation, and the trial court approved the settlement.

Appellant A. Douglas Mastroianni (Mastroianni)—a now-disbarred attorney—represented two of Kids World's prior owners in the underlying action concerning the indoor play structure. Mastroianni's clients subsequently assigned their $345,000 share

---

[1] Although the record indicates that the name of the children's entertainment business changed over time, we refer to the business as "Kids World" throughout this opinion for convenience.

of the total $500,000 prevailing party fee award to Mastroianni. Mastroianni then filed a Code of Civil Procedure section 708.410[2] lien for the $345,000 plus interest, against Children Solution's malpractice action. On the basis of that lien, Mastroianni intervened in the malpractice action and unsuccessfully opposed Altman and Children Solution's motion for settlement approval.

Mastroianni now asks us to reverse the trial court's order approving the settlement, urging the court erred by (1) approving the $250,000 total settlement amount, (2) approving the settlement's terms allocating $113,500 of the $250,000 to pay Children Solution's attorney fees in the malpractice action, and (3) refusing to order that Altman pay the settlement proceeds directly to Mastroianni in satisfaction of his judgment lien.

Mastroianni's first two arguments fail because we conclude the trial court acted within its discretion in approving the total settlement amount and the attorney fee award. The record demonstrates that the court properly considered and weighed the relevant factors in approving these aspects of the settlement. Moreover, the attorney fee lien held by Children Solution's lawyer

---

[2] All subsequent unspecified statutory references are to the Code of Civil Procedure.

Section 708.410 permits "[a] judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action . . . [to] obtain a lien . . . , to the extent required to satisfy the judgment creditor's money judgment, on both of the following:  [¶] (1) Any cause of action of such judgment debtor for money or property that is the subject of the action or proceeding[;] [¶] (2) The rights of such judgment debtor to money or property under any judgment subsequently procured in the action or proceeding."  (§ 708.410, subd. (a).)

3

in the malpractice action has priority over Mastroianni's judgment creditor lien.

We agree, however, that the court abused its discretion in failing to order payment of the remaining $136,500 in settlement proceeds directly to Mastroianni. A trial court may not " 'deprive[ ] any party of the legal rights to which it is entitled in terms of the priority of its lien . . . in the absence of appropriate equitable considerations' " (*Casa Eva I Homeowners Assn. v. Ani Construction & Tile, Inc.* (2005) 134 Cal.App.4th 771, 778 (*Casa Eva*)), and here the court failed to identify any such equitable considerations in rejecting Mastroianni's request for payment nor do we find any.

Accordingly, we reverse the portion of the judgment denying Mastroianni's request that $136,500 of the settlement proceeds be paid to him. In all other respects, we affirm the order approving the settlement.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY[3]

### A. *A Flood Damages the Indoor Play Structure*

In January 2003, Oak Park Center, LLC, as landlord, executed a lease with tenant Oak Park Bright Child, Inc. (Bright Child), a company owned by Jamie Riese (Riese). In connection with the lease, the landlord agreed to pay for the construction of a large indoor play structure for Bright Child's use in operating the Kids World children's entertainment business. Bright Child assigned the Kids World business lease to Joseph MacFarlane (MacFarlane) in June 2008. The landlord approved the transaction. MacFarlane ultimately assigned the lease to his affiliated company, A&A Entertainment (A&A).

---

[3] We summarize here only the facts and procedural history relevant to our resolution of this appeal.

4

Five years later, in September 2013, MacFarlane and A&A sold Kids World's assets to Teaca and Kutsina, who formed Children Solution, LLC to hold the assets. The landlord again approved the sale. The asset purchase agreement governing the transaction provides a $200,000 purchase price, but Teaca testified that the purchase price was in fact $295,000. The agreement identified the indoor play structure as one asset being transferred to Children Solution as part of the sale.

Only three months later, a major flood damaged the indoor play structure. Both the landlord and Children Solution made insurance claims in connection with the structure. The landlord's insurer determined that the landlord owned the structure and paid a claim. Children Solution also received an approximately $650,000 insurance payout based on damage to the play structure, as well as its representations that it had invested over $200,000 in other physical improvements to the Kids World business in the approximately three months between its purchase of Kids World's assets and the flood.

B.    *Children Solution Retains Altman to Sue Kids World's Prior Owners*

Following the flood, Children Solution grew concerned that—notwithstanding the terms of the asset purchase agreement—it might not, in fact, own the play structure. Its concern stemmed from statements allegedly made by the landlord and from the determination by the landlord's insurer that the landlord owned the play structure. Children Solution therefore retained Altman, who sued A&A and MacFarlane for allegedly misrepresenting their ownership of the play structure in connection with the sale of the Kids World business (the *MacFarlane* action). The suit included as named plaintiffs not only the Children Solution, LLC entity, but Teaca and Kutsina individually. The suit also named Riese

and Bright Child as defendants. Mastroianni, then a practicing attorney, represented Riese and Bright Child in the *MacFarlane* action.

**C.** ***Children Solution Loses at Trial, and the Court Awards Prevailing Party Attorney Fees to Bright Child and Riese, Mastroianni's Clients***

The parties litigated the *MacFarlane* action for several years. The trial court dismissed Teaca and Kutsina's individual claims against Riese and Bright Child at the summary judgment stage. The court then conducted a bench trial on the remaining claims, ultimately concluding that Children Solution, LLC had failed to prove that Kids World's prior owners did not possess and pass title to the play structure.

The court subsequently awarded $158,000 in prevailing party attorney fees to MacFarlane and A&A, adjudging Children Solution, LLC, Teaca, and Kutsina jointly and severally liable for the full amount. The court also awarded $345,000 in fees to Mastroianni's clients, Riese and Bright Child. The court ordered Teaca and Kutsina, in their individual capacities, jointly and severally liable for one half (i.e., $172,500) of that amount.

Riese and Bright Child assigned the $345,000 fee award to Mastroianni, and he initiated collection proceedings against Children Solution. Prior to the assignment, the State Bar of California suspended Mastroianni from the practice of law. The California Supreme Court later issued an order disbarring him.

**D.** ***Children Solution Sues Altman for Malpractice***

On July 16, 2019, Children Solution sued Altman for malpractice (the malpractice action). The complaint alleged, inter alia, that Altman had committed professional negligence by naming Teaca and Kutsina as individual plaintiffs, thereby

6

exposing them to an adverse attorney fee award. Altman filed a cross-complaint alleging that Children Solution owed him approximately $100,000 in attorney fees. Mastroianni filed a section 708.410 lien in the malpractice action.

### E. *The Trial Court Approves the Malpractice Action Settlement, Over Mastroianni's Objection*

In April 2021, Children Solution and Altman successfully negotiated a resolution of the malpractice action at mediation. Under the terms of the settlement, Altman Law, via its insurer, Imperium Insurance, agreed to pay $250,000 in total to settle the case. The settlement allocated $113,500 of the $250,000 amount to pay for Children Solution's attorney fees in the malpractice action.

The agreement provided further that the remaining $136,500 should be "made payable to [Children Solution], the client trust account of Reza Sina [(Children Solution's attorney in the malpractice action)], and any judgment creditor that has filed a lien in the case, . . . or in any such other way as the court may direct." (Capitalization omitted.) Children Solution, in return, agreed to pay Altman $15,000 in his individual capacity.

On May 12, 2021, Children Solution and Altman moved ex parte for approval of the settlement. They argued the settlement was reasonable because, among other reasons, the "insurance windfall" paid to Children Solution would have harmed its credibility before a jury. In addition, respondents noted that the primary theory of malpractice liability was that Altman acted negligently in exposing Teaca and Kutsina to $330,500 in attorney fees judgments in their individual capacities, and the $250,000

7

settlement represented more than half the amount of those judgments.  Mastroianni opposed the ex parte application.[4]

The trial court denied ex parte relief and instead set a briefing schedule for a motion to approve the settlement.  Over the next five months, the court solicited multiple rounds of briefing, permitting Mastroianni to file hundreds of pages of materials in opposition to the motion to approve the settlement.  The court also heard argument on the motion.  Finally, on November 22, 2021, the court granted the motion to approve the settlement, over Mastroianni's objection.  The court also declined Mastroianni's request that it order Altman to pay the $136,500 settlement amount due to Children Solution directly to him, citing Mastroianni's purported failure to provide any relevant authority in support of his request.

Mastroianni timely appealed.[5]

_____

[4] Mastroianni also filed a separate action for fraudulent conveyance against Children Solution, Sina (Children Solution's malpractice attorney), and Altman.  (See *Mastroianni v. Kutsina, et al.* (Sup. Ct. L.A. County, 2021, No. 21STCV14930).)  Altman contends that Mastroianni did so to block the settlement. The docket in that case indicates the trial court dismissed the action on December 8, 2021.

[5] Previously, we provisionally granted Mastroianni's request that we take judicial notice of certain materials in connection with this appeal.  We now grant his request in full.

## DISCUSSION

### A. *Mastroianni's Suspension and Subsequent Disbarment Do Not Prohibit His Appeal*

Before we turn to the merits of Mastroianni's appeal, we first must address—and reject—respondents' contention that Business and Professions Code section 6130 prohibits Mastroianni from pursuing his appeal.

That section provides: "No person, who has been an attorney, shall while a judgment of disbarment or suspension is in force appear on his own behalf as plaintiff in the prosecution of any action where the subject of the action has been assigned to him subsequent to the entry of the judgment or disbarment or suspension and solely for purpose of collection." (Bus. & Prof. Code, § 6130.)

On November 12, 2019, the State Bar of California issued an order suspending Mastroianni's ability to practice law, to take effect three calendar days after service of the order. The State Bar served the order the same day it issued, and the order therefore took effect on November 15, 2019. Then, on August 19, 2020, the California Supreme Court issued an order disbarring Mastroianni.

On March 5, 2020—after his suspension, but before his disbarment—MacFarlane and A&A assigned to Mastroianni the entirety of the judgment entered in their favor in the *MacFarlane* action. Children Solution and Altman urge that, because Mastroianni's former clients assigned the judgment to him only after his suspension, Business and Professions Code section 6130 prohibits his pursuit of this appeal.

The terms of the assignment, however, indicate that it rendered Mastroianni "the actual bona fide owner of the judgment[,] and that it was not 'assigned to him for collection,' " as required to trigger Business and Professions Code section 6130's

9

application.  (*Wilde v. Superior Court* (1942) 53 Cal.App.2d 168, 173.)  The assignment provides that Mastroianni's former clients transferred to him "*all rights arising out of and incident to the judgment and the underlying contracts on which it is based*, including but not limited to the right to collect the judgment and receive payments in satisfaction of the judgment *and all other rights arising out of and incident to the judgment*."  (Italics added.)  Children Solution and Altman point to no evidence that the assignment was merely a sham intended to permit Mastroianni to continue representing his former clients following his suspension and disbarment.

Accordingly, we conclude that Business and Professions Code section 6130 does not prohibit Mastroianni from pursuing this appeal relating to the judgment, notwithstanding his suspension and subsequent disbarment.

### B.    *The Trial Court Acted Within Its Discretion in Approving the Settlement and Attorney Fees Amounts, But Erred in Failing To Direct a Portion of the Settlement Funds to Mastroianni*

Mastroianni contends that the trial court erred by (1) approving the $250,000 total settlement amount, (2) approving the settlement's terms allocating $113,500 of the $250,000 to pay Children Solution's attorney fees in connection with the malpractice action, and (3) failing to order Altman to pay the settlement proceeds directly to Mastroianni in satisfaction of his judgment lien.

#### 1.    *$250,000 settlement amount*

The trial court did not abuse its discretion in approving the $250,000 settlement amount over Mastroianni's objection.

Section 708.440 permits a trial court to approve a settlement over a judgment creditor's objection, subject to "such terms and

conditions as the court deems necessary." (§ 708.440, subd. (b); see *id.*, subd. (a).) " 'Generally speaking, a trial court's approval of a settlement subject to certain conditions related to a judgment lien is reviewed under an abuse of discretion standard.' "[6] (*Casa Eva*, *supra*, 134 Cal.App.4th at p. 778.)

A court abuses its discretion in approving a settlement pursuant to section 708.440 "when it fails to consider relevant factors" *(Oldham v. California Capital Fund, Inc.* (2003) 109 Cal.App.4th 421, 430), including a recognition that a settlor should pay less in settlement than following a trial, the financial condition of the settling parties, and whether the settlement is structured in a manner designed to evade a judgment creditor's lien. (See *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499–500 (*Tech-Bilt*); *Oldham*, *supra*, 109 Cal.App.4th at p. 430.)

Here, the record demonstrates that the trial court had sufficient information to evaluate the settlement amount and considered the relevant factors in doing so. The court solicited multiple rounds of briefing from the parties—including more than 500 pages of materials from Mastroianni—concerning the propriety of the settlement. The briefing submitted by Children Solution and Altman detailed the weaknesses in Children Solution's malpractice action, including that the "insurance windfall" it received could have damaged its credibility at a trial. And Mastroianni's briefing highlighted his concern that the parties intended to evade his lien via the settlement.

---

[6] Mastroianni urges that we must review his challenge to the settlement de novo because the trial court did not have "sufficient information on which to make a reasoned judgment" about whether to approve the settlement. Because we conclude the trial court did have sufficient information to evaluate the settlement, we necessarily reject this argument.

In its written ruling approving the settlement, the trial court stated expressly that it had considered the parties' "supplemental briefing and declarations." It then concluded that the $250,000 settlement amount was reasonable in light of Children Solution's weak financial condition and the litigation risks faced by both Children Solution and Altman. The court also found persuasive that the proposed settlement amount "represent[ed] more than 50 [percent]" of the individual attorney fee judgments for which Teaca and Kutsina were liable.

The record thus confirms that the trial court engaged in a balanced, reasoned analysis of the relevant factors in considering the settlement. We therefore conclude that the court acted within its discretion in approving the $250,000 settlement amount.

None of Mastroianni's arguments in opposition persuades us otherwise. First, he contends that Children Solution and Altman improperly excluded him from the mediation. But he points to no authority demonstrating his entitlement to attend the mediation, and he does not dispute that the mediator reached out to him to obtain his views. Indeed, Mastroianni's responsive email to the mediator indicates that he refused to participate because the mediator had not invited his participation earlier and because he questioned the mediator's neutrality.

Second, Mastroianni argues that Children Solution and Altman failed to disclose several categories of purportedly material facts to the trial court, including facts allegedly demonstrating (1) Altman had no viable defenses to Children Solution's malpractice action, (2) Sina, Children Solution's attorney, mishandled the malpractice action, (3) Altman carried at least $1 million in malpractice insurance, and (4) Altman coerced Children Solution into settling the malpractice action by

12

threatening to disclose Kutsina's alleged involvement in insurance fraud.

As an initial matter, we note that many of the "facts" Mastroianni identifies—the veracity of which Children Solution and Altman dispute—amount merely to arguments or allegations. Such assertions do not demonstrate the impropriety of the settlement. (See *Tech-Bilt*, *supra*, 38 Cal.3d at p. 499 [cautioning against "convert[ing] the pretrial settlement approval procedure into a full-scale minitrial"].) Moreover, Mastroianni highlighted the purported facts in the materials he submitted to the trial court. The court therefore was aware of these alleged facts when it considered and approved the settlement amount.

Third, and finally, Mastroianni argues that the trial court's order approving the settlement improperly relies on facts from outside the record, including that Children Solution was considering filing for bankruptcy. But Mastroianni himself introduced evidence that he had discussions with Kutsina's bankruptcy lawyer and submitted evidence of those conversations to the trial court.

Accordingly, we conclude the court acted within its discretion in approving the $250,000 settlement amount.

## 2.     *Children Solution's attorney fees*

We conclude further that the court acted within its discretion in approving the settlement's terms allocating $113,500 of the total $250,000 amount to pay Children Solution's attorney fees in the malpractice action.

As an initial matter, the lien for attorney fees held by Sina, Children Solution's lawyer, takes priority over Mastroianni's lien. "The general rule, all things being equal, is that liens have priority among themselves according to the date of their creation."

13

(*Pangborn Plumbing Corp. v. Carruthers & Skiffington* (2002) 97 Cal.App.4th 1039, 1049.) "Under certain circumstances," however, "priority may not be based upon which lien was *created* first, but may depend upon which lienholder first gave notice to the person in possession of property subject to competing lien claims." (*Id.* at p. 1050, italics omitted.) "While the priority of certain kinds of *statutory* liens, for example, judgment liens, is dependent on the timing of the giving of proper notice [citation], *no* notice is required before a contractual lien for attorney's fees is valid and protected against a levy by a judgment creditor." (*Id.* at pp. 1050–1051.)

Here, attorney Sina entered into a retainer agreement with Children Solution—which entitled him to a contingent 45 percent fee of any gross recovery obtained in the malpractice action—on January 8, 2019. Mastroianni did not file his notice of judgment lien against the malpractice action until over a year later, on March 6, 2020. Sina's attorney fee lien therefore takes priority over Mastroianni's judgment lien, and the court therefore did not abuse its discretion in approving a settlement that provided for the payment of Sina's attorney fees.

Further, the court acted within its discretion in approving the amount of attorney fees awarded to Sina pursuant to the settlement. The court carefully scrutinized Sina's billing records, disallowed charges for approximately 117 of the 347 hours Sina recorded, and performed a lodestar calculation in determining that the settlement's $113,500 attorney fee award was reasonable: "[E]ven 230 hours at Sina's 2014 hourly rate of $550 would still result in a total lodestar amount of $126,500, which is greater than the $113,500 attorneys' fees award to Sina via the settlement."

We are not persuaded otherwise by Mastroianni's contention that the $113,500 fee award violated the terms of Sina's retainer agreement with Children Solution because the award exceeded

14

(by $1,000) 45 percent of the $250,000 settlement amount. Although the agreement provides for a 45 percent contingent attorney fee of any " 'gross recovery' obtained," the agreement also provides that "[i]f [Sina] is awarded or settled any attorneys' fees in the matter, *then attorney's fee herein shall be at the election of attorney of the following*:  (i) attorney's applicable percentage of the 'gross recovery,' or (ii) *the attorney fees awarded or settled*." (Capitalization omitted & italics added.)

The trial court therefore did not abuse its discretion in approving the settlement's $113,500 attorney fee award.

### 3.     *Payment to Mastroianni*

We conclude that the trial court did err, however, in failing to direct payment of the remaining $136,500 in settlement funds to Mastroianni.  In approving a settlement pursuant to section 708.440, a court abuses its discretion where it " 'make[s] an order that deprives any party of the legal rights to which it is entitled in terms of the priority of its lien, in the absence of appropriate equitable considerations.' " (*Casa Eva, supra*, 134 Cal.App.4th at p. 778.)

Here, the trial court's order did not identify any equitable considerations counseling against using the remaining $136,500 to satisfy a portion of Mastroianni's judgment lien.  Instead, the court denied Mastroianni's request that Altman pay the settlement funds to him directly because it determined that Mastroianni provided "[n]o authority . . . for [his] request."  But section 708.440 itself provides such authority.  (See § 708.440, subd. (b) [authorizing a trial court to include in its order approving a settlement under section 708.440, subdivision (a) "such terms and conditions as the court deems necessary"].)  Nor has Children Solution identified any equitable basis for depriving Mastroianni of the $136,500.

15

Accordingly, we conclude that the court abused its discretion in refusing to order payment of the $136,500 amount to Mastroianni.

### C. *We Decline Mastroianni's Remaining Requests*

Finally, we are not persuaded by Mastroianni's arguments that Children Solution and Altman acted in contempt of court orders by transferring certain settlement proceeds to attorney Sina's client trust account. Mastroianni urges that Altman's transfer of the settlement proceeds violated (1) the automatic stay that applies to certain underlying actions once a party files a notice of appeal, (2) the trial court's July 11, 2022 order staying the malpractice action pending the appeal, and (3) section 708.440.

As an initial matter, Mastroianni fails to cite any authority that might exempt him from section 917.1's requirement that, to stay enforcement of a judgment or order for "[m]oney or the payment of money" during the pendency of an appeal, he must post an undertaking. (§ 917.1, subd. (a)(1).) Nor does Mastroianni dispute that he failed to post any such undertaking.[7]

Next, crediting the Altman respondents' representation that Altman paid the settlement proceeds within 30 days of settlement approval—a representation Mastroianni does not contest—Altman's payment took place months before the trial court issued its July 11, 2022 order staying the malpractice action. We therefore fail to see how the payment could have violated the court's order.

Finally, Mastroianni points to no authority in support of his contention that a party violates section 708.440 by making payments pursuant to a court-approved settlement.

---

[7] We note further that we denied Mastroianni's motion for a stay from this court.

16

Accordingly, we decline Mastroianni's request that we issue an order to show cause regarding contempt directed to Children Solution and its counsel, Altman and his counsel, and the Imperium Insurance Company. We also reject Mastroianni's related requests that we impose sanctions and report this matter to the State Bar.

## DISPOSITION

The portion of the November 22, 2021 order denying Mastroianni's request for $136,500 of the available settlement proceeds is reversed. On remand, the trial court is directed to order payment of the $136,500 directly to Mastroianni within a reasonable time frame to be determined by the court. In all other respects, the November 22, 2021 order approving the settlement is affirmed. Mastroianni's requests that we issue an order to show cause regarding contempt, impose sanctions, and make referrals to the State Bar are denied. Mastroianni is awarded his costs on appeal.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

WEINGART, J.

17